In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-151 CR


____________________



EX PARTE DAVID WILLIAM WATSON






On Appeal from the County Court at Law Number 1


Montgomery County, Texas


Trial Cause No. 04-192190-01






MEMORANDUM OPINION


 David William Watson prosecutes this direct appeal from the denial of relief he requested
in a pretrial application for writ of habeas corpus. Watson was charged with the misdemeanor
offense of driving while intoxicated and opted to have a jury decide his guilt. During the course of
the trial, Watson twice objected to a State's witness's mention of a numerical alcohol concentration
level hypothesized from horizontal gaze nystagmus (HGN) indicators. Watson argued the testimony
violated a motion in limine. Upon the second objection, the trial court granted Watson's motion for
mistrial. Prior to his retrial, Watson filed an application for writ of habeas corpus alleging further
prosecution was barred by double jeopardy. The trial court granted the writ, held a hearing, and
denied the relief sought by Watson. We affirm the trial court's denial of relief.

BACKGROUND


 Watson was charged with the misdemeanor offense of driving while intoxicated ("DWI")
on or about December 8, 2003. See TEX. PEN. CODE ANN. § 49.04(a), (b) (Vernon 2003). 
Watson requested a jury trial and the record appears to indicate that a jury was selected on January
24, 2005, with testimony beginning on January 26, 2005. On January 24, 2005, Watson filed, inter
alia, a "motion in limine" requesting the trial court

 preclude the State from presenting any evidence attempting to use Horizontal Gaze
Nystagmus (HGN) test results to . . . [a.] quantify Defendant's breath or blood
alcohol content; [b.] quantify a number of alcoholic beverages consumed; [or, c.]
quantify alcohol consumed as a little or a lot, or, as a low or a high dose, or, as any
degree more than a mere presence[.]

 

The trial court granted these three requests. 

 On the day testimony began, the trial court sustained Watson's objection to the admissibility
of the breath test slip that was generated when Trooper Steve Hoppas administered a breath test to
Watson following Hoppas's arrest of Watson for the DWI offense. (1) The State was left with its
alternate allegation that Watson's intoxication was based upon loss of "the normal use of [his]
mental and physical faculties . . . ." Thereafter, the two incidents that form the basis for Watson's
claim of prosecutorial misconduct took place, with each involving the testimony of Trooper Hoppas.

 The first instance took place during the State's detailed questioning of Hoppas regarding
Hoppas's personal observations while administering the HGN to Watson as part of the battery of
field sobriety tests. At this point in his testimony, Trooper Hoppas had already explained to the jury
that "nystagmus" was an "involuntary jerking of the eyes during movement, resting and at different
points[,]" and that when a person's central nervous system is depressed, possibly because of alcohol
intoxication, the eyes will not move smoothly from side to side. The HGN test checks for such
involuntary "jerking" of the eyes as a possible indicator of intoxication. During further examination,
in response to the State's questioning, the trooper testified as follows:

 Q. How many clues are involved with the HGN?


 A. Six possible clues.


 Q. How many clues did you see with this particular defendant?


 A. Six.


 Q. What does that tell you?


 A. Due to the standard by the tests, it's 81 percent chance of being over .10.


 [Defense Counsel]: May we approach?


 At that point, Watson interposed his strong objection to the testimony that there was an 81%
chance that Watson's alcohol concentration was .10 at the time of the HGN test. Watson argued this
testimony was a violation of his previously filed motion in limine. The trial court sustained
Watson's objection, provided a very specific instruction to the jury to "disregard any response [by
the trooper] as to any number that was given by him in response to what the six clues indicated to
you as far as a quantitative amount." The trial court then denied Watson's motion for mistrial.
Shortly after the first incident, the State resumed questioning the trooper when trial counsel again
requested a bench conference. At that point, the defense requested the witness be admonished of
the court's prior ruling. While the record reflects thereafter that the lead prosecutor, defense
counsel, and Trooper Hoppas were whispering to each other, the record does not reflect what
admonishments, if any, were given to Trooper Hoppas by the State and trial counsel during the
"whispering" episode. Furthermore, the record does not reflect any admonishment made to Trooper
Hoppas by the trial court. 

 The second incident with Trooper Hoppas precipitated the trial court's grant of Watson's
second mistrial motion. However, this second incident occurred during cross-examination of the
trooper by Watson's trial counsel. 

 Q. So we can stick with alcohol here. And just because you have six clues on the
HGN does not guarantee that someone has lost normal use of their mental and/or
physical faculties, does it? It's a sign you look at, right? 


 A. A sign they are over .08.


 [Defense Counsel]: May we approach?


 THE COURT: You may.


 Watson's trial counsel again strenuously objected arguing to the trial court that Hoppas "was
informed again not to mention that and once again he's done it. I've tailored my questions about
loss of normal use of physical, mental faculties. The officer, once again, blurted out for the jury of
being .08." The jury was retired and a hearing was held outside their presence, during which
defense counsel moved again for a mistrial. The trial court granted Watson's motion for mistrial and
dismissed the jury.



THE WRIT HEARING


 At the writ hearing, trial counsel for Watson and the lead prosecutor testified. Prior to his
testimony, trial counsel requested that all testimony and evidence presented at the jury trial be
admitted, and the trial court granted his request. Also admitted for purposes of the hearing were
certain written motions and responses filed by the parties prior to the jury trial, including Watson's
motion in limine regarding the HGN evidence. Watson's trial counsel testified to the sequence of
events, as he recalled them, surrounding the two mistrial motions, and included his observations as
to why he considered the State to be ultimately responsible for the mistrial, viz: 

 It's my belief that the State's actions were reckless in not warning this
witness. And in the situation where the trial was not going good for the State and it
was apparent they were not going to get the .08 in based on the Court's rulings, they
could not call, in my opinion, Julie Evans because she had not properly been noticed
as an expert or a witness in this case. 


 . . . .


 The reckless conduct forced me to come up and to preserve the appellate
error. I made the objection. The Court sustained it. I asked for a limiting or an
instruction to the jury to disregard. And I am forced by law to request a mistrial to
properly preserve error. And the Court granted that mistrial. 


 This is not something that we caused ourself. . . .

 

 I did everything appropriately by warning the State through a motion in
limine, by warning the State orally prior to the lunch break or during the lunch break
prior to Trooper Hoppas testifying. The case was going bad for the State on that
issue, on the .08, which was testimony elicited, not once but twice, and even though
it came through my question, it's their own witness, the only chance they had of
getting it in. Their reckless conduct of not warning this witness not to do it, caused
me to request a mistrial. 


 Watson then called the State's lead prosecutor at the time of trial who testified that, while
the trooper may not have been specifically admonished of the trial court's ruling on the motion in
limine, nevertheless, " . . . I absolutely told him, I said from here on out do not mention anything
about blood alcohol level, just talk about the loss of normal use." 

 Following the testimony and arguments from counsel, the trial court specifically questioned
Watson's trial counsel about any evidence of the state's involvement in the improper testimony of
the trooper. From such exchange, it is apparent the trial court felt the witness was adequately
admonished by the State and that the witness's testimony was not part of any intentional or reckless
misconduct on the prosecutor's part, and that the decision to move for a mistrial the second time was
a matter of choice on the part of the defense. At the conclusion of the hearing, the trial court found
no intentional or reckless misconduct on the part of the prosecutor and denied the relief requested
by Watson.

DOUBLE JEOPARDY LAW



 We have recently discussed the state of the law with regard to a criminal defendant's double
jeopardy protection from successive prosecutions. See Kelson v. State, 167 S.W.3d 587, 591-92
(Tex. App.--Beaumont 2005, no pet. h). The lone issue in the instant appeal is whether Watson is
entitled to relief from being successively tried for the same offense he was facing when the mistrial
was declared. As we noted in Kelson, while Texas and Federal double jeopardy provisions have
similar language, their application has taken divergent paths since the Texas Court of Criminal
Appeals issued Bauder v. State, 921 S.W.2d 696 (Tex. Crim. App. 1996) ("Bauder I"). See Kelson,
167 S.W.3d at 591. Currently, the seminal Texas case on the issue is Ex parte Peterson, 117 S.W.3d
804 (Tex. Crim. App. 2003). Peterson contains a lengthy discussion comparing and contrasting the
state of the law vis-a-vis Texas and Federal double jeopardy protections. Id. at 810-18. In Texas,
the operative decisions on double jeopardy protection include the Bauder line of cases (2) and State
v. Lee, 15 S.W.3d 921 (Tex. Crim. App. 2000), as well as Peterson. Peterson, 117 S.W.3d at 816. 
On the federal level, the Peterson Court cited Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72
L.Ed.2d 416 (1982), as the leading case on double jeopardy protection. Peterson, 117 S.W.3d at
811-13. 

 Under either a Kennedy or Bauder double jeopardy claim on a pretrial writ of habeas corpus,
the burden of proof is on the habeas applicant to present sufficient evidence to prove his claim by
a preponderance of the evidence. Peterson, 117 S.W.2d at 818. This requires the habeas applicant
to satisfy each of the following three prongs listed in Peterson:

 1) Did manifestly improper prosecutorial misconduct provoke the mistrial?


 2) Was the mistrial required because the prejudice produced from that misconduct
could not be cured by an instruction to disregard? And


 3) Did the prosecutor engage in that conduct with the intent to goad the defendant
into requesting a mistrial (Kennedy standard) or with conscious disregard for a
substantial risk that the trial court would be required to declare a mistrial (Bauder
standard)?


Id. at 816-17 (footnotes omitted).

 Trial and appellate courts are to "focus primarily upon the objective facts and circumstances
of the prosecutor's conduct and the events which led to that conduct." Id. at 815, 818. Conduct is
not manifestly improper if it is the result of inadvertence, sloppiness, or even simple negligence. 
Id. at 817. "A prosecutor's blunder that precipitates a successful motion for mistrial does not bar
a retrial." Id. "Prosecutorial misconduct reasonably reaches only that conduct which is qualitatively
more serious than simple error and connotes an intentional flouting of known rules or laws." Id. at
816 n. 55 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 647-48, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1973)). Moreover, "[i]f the prosecutor's conduct, viewed objectively, was not 'manifestly
improper,' then the double jeopardy inquiry ends at this first stage." Id. (citing State v. Lee, 15
S.W.3d at 921, 924-25 (Tex. Crim. App. 2000)). 

 The Peterson Court reiterated the proper inquiry, previously set out in Bauder II, as being
whether the defendant was

 required to move for a mistrial because the prosecutor deliberately or recklessly
crossed "the line between legitimate adversarial gamesmanship and manifestly
improper methods" that rendered trial before the jury unfair to such a degree that no
judicial admonishment could have cured it[.] 


Peterson, 117 S.W.3d at 816 (citing Bauder II, 974 S.W.2d at 732). It is only when the prosecutor's
deliberate or reckless actions cannot be cured by any judicial admonishment, that a defendant is
"required" to move for a mistrial, and if granted bars retrial in Texas. Id. As such, our examination
of the trial record is not to discover whether the trial court correctly granted the mistrial, but to
determine if the trial court was "compelled" by the alleged prosecutorial misconduct to grant the
defendant's request for the mistrial. Peterson, 117 S.W.3d at 815 (citing Kennedy, 456 U.S. at 673).
For our purposes, the trial record must satisfy the more "critical inquiry," that being "whether the
defendant made a free choice to request a mistrial, rather than being compelled to do so because of
the prosecutor's 'manifestly improper methods . . . deliberately or recklessly' committed." Peterson,
117 S.W.3d at 816 (quoting Bauder II, 974 S.W.2d at 732).

 As previously noted, it is the burden of the habeas applicant to present sufficient evidence
to prove his claim by a preponderance of the evidence. Id. at 818. We are unable to locate in the
record where the trial court directed an admonishment specifically to Trooper Hoppas to refrain
from mentioning any numerical alcohol concentration based upon the HGN. Furthermore, while the
record does indicate that the lead prosecutor and trial counsel conversed with the trooper at a point
during the trial, presumably to admonish the trooper, the "whispering" was apparently inaudible to
the court reporter and no reconstruction of the conversation appears in the appellate record. In Ortiz
v. State, 144 S.W.3d 225, 229-230 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd), the Court 
held that the current rules of appellate procedure do not absolve a defendant of his burden of
presenting a record to show error requiring reversal insofar as he is required to develop the record
to show the nature and source of an error and, in some cases, its prejudice to him. Here, the record
does not reveal what instructions were given to Trooper Hoppas in an attempt to eliminate his
mention of any numerical value of intoxication level based upon Watson's HGN tests. (3) 

 Watson also appears to have argued to the trial court that it should impute any "misconduct"
on the trooper's part to the State. In Ex parte Washington, 168 S.W.3d 227 (Tex. App.--Fort Worth
2005, no pet.), the Court of Appeals refused to hold that the state of mind of a State's witness could
be imputed to the State so as to preclude further prosecution under the double jeopardy principles
of the Fifth Amendment of the United States Constitution or Article I, section 14 of the Texas
Constitution. See id. at 237-38. We agree with the Fort Worth Court of Appeals as there is no
salient authority to support such an argument.

 At any rate, the record fails to indicate any improper conduct on the part of the prosecution
which led to the responses in question. The prosecutor's questions leading up to the trooper's initial
response were ones eliciting facts surrounding the trooper's field sobriety testing of Watson and
ones eliciting abstract explanations of the function and science behind those tests. The second
occurrence took place during Watson's own cross-examination of Trooper Hoppas. Watson
provides no authority as to how the prosecution could somehow be complicit in an improper
response from a State's witness during cross-examination by defense counsel. The core of Watson's
argument is that the State failed to strongly admonish Trooper Hoppas to refrain from mentioning
any numerical alcohol concentration when explaining HGN testing administered to Watson. 
However, the record indicates that the admissibility of Watson's breath test result was not
determined until after the trial began. Indeed, as noted above, the State's opening statement to the
jury included the fact that Watson took a breath test and that the breath test result was .127, with the
"legal limit" being .08. 

 In reviewing the trial court's decision to deny the relief requested, we review the facts in the
light most favorable to the judge's ruling and should uphold it absent an abuse of discretion. 
Peterson, 117 S.W.3d at 819. "Reviewing courts . . . should 'afford almost total deference to a trial
court's determination of the historical facts that the record supports especially when the trial court's
fact findings are based on an evaluation of credibility and demeanor.'" Id. (quoting Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The same level of deference is afforded to a trial
court's ruling on "'application of law to fact questions,' also known as 'mixed questions of law and
fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and
demeanor." Id. (quoting Guzman, 955 S.W.2d at 89). "But appellate courts review de novo those
'mixed questions of law and fact' that do not depend upon credibility and demeanor." Id. (quoting
Guzman, 955 S.W.2d at 89).

 Upon the record-facts, we see no manifestly improper conduct on the part of the State; no
"intentional flouting of known rules of laws" by the State; nor any conduct attributable to the State
that was "qualitatively more serious than simple error." Peterson, 117 S.W.3d at 816 n.55. As such,
Watson's first and second requests for mistrial were not compelled, with both being a result of his
free choice in the face of otherwise curable violations of evidentiary rules. See id. at 816-17 n.55;
Adams v. State, 156 S.W.3d 152, 157-58 (Tex. App.--Beaumont 2005, no pet.) (trial court's
instruction to disregard testimony of inadmissible portable breath test result cured any resulting
harm). The jury had already been exposed to the fact that Watson's breath test result was .127 with
legal intoxication being .08. The record-facts do not indicate that Watson was required to move for
a mistrial because of any "manifestly improper methods" on the part of the State which "rendered
trial before the jury unfair to such a degree that no judicial admonishment could have cured it[.]"
Peterson, 117 S.W.3d at 816 (citing Lee, 15 S.W.3d at 923). We therefore find no merit in Watson's
lone appellate issue. As such, we find no error by the trial court in denying Watson's requested
habeas corpus relief. The trial court's order denying relief is affirmed.

 AFFIRMED.


 ______________________________

 CHARLES KREGER

 Justice


Submitted on September 7, 2005

December 21, 2005

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. During its opening statement to the jury, though, the State did indicate, without
objection from Watson, that it intended to prove that Watson submitted to a breath test on the
night of his arrest and that Watson's breath test result was ".127," while the "legal limit is .08." 
2. See Bauder v. State, 921 S.W.2d 696 (Tex. Crim. App. 1996) (Bauder I), and Ex parte
Bauder, 974 S.W.2d 729 (Tex. Crim. App. 1998) (Bauder II).
3. A trial judge's grant or denial of a motion in limine is a preliminary ruling only and
normally preserves nothing for appellate review. See Geuder v. State, 115 S.W.3d 11, 14-15
(Tex. Crim. App. 2003). Any remedy for a violation of a motion in limine is with the trial court,
which may apply the sanctions of contempt or other appropriate action. Id., 115 S.W.3d at 15
n.11. Although Watson persistently argues that his motion in limine was granted prior to trial,
the record is less than clear that what was granted was intended to cover precisely the portion of
Trooper H9oppas's HGN testimony complained of. Furthermore, what is listed by the court
reporter as "Motions in Limine" in the index of the record appears to be a brief suppression
hearing involving the admissibility of the breath test slip, State's Exhibit 1, with no mention
made of any HGN testimony or evidence.