

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00161-CR

JOSE IGNACIO RAZO
APPELLANT

V.

THE STATE OF TEXAS
STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Jose Ignacio Razo appeals his conviction and sentence for aggravated robbery. In three issues, Razo contends that his double jeopardy rights were violated; that the evidence is legally insufficient to support his

---

[1]*See* Tex. R. App. P. 47.4.

conviction; and that the trial court erred during the punishment phase by allowing the State to introduce a videotape from a convenience store. We will affirm.

## II. BACKGROUND

On the night of the alleged robbery, eighty-five year-old Frank Burk made six 9-1-1 calls from his home between 1:50 a.m. and 2:20 a.m. When officers arrived, Burk's eyes were swollen shut, and he was moving slowly, had trouble hearing, and appeared to have been beaten. The door from Burk's garage to his house had been busted in, his house was ransacked, and there was blood throughout the house.

A few hours later, police stopped Razo while he was driving a car with two other occupants. After police found a revolver and some of Burk's possessions in the vehicle, all three occupants were placed in custody. Razo was charged with aggravated robbery, and this case eventually went to trial. Razo's first trial ended in a mistrial.

When Razo's second trial began, Razo asserted that jeopardy had attached at the previous trial and asked the trial court to dismiss the case, but the court denied Razo's motion on double jeopardy. After hearing the evidence, the jury found Razo guilty.

During the punishment phase, the State introduced evidence to support its theory that Razo was involved in three additional robberies the same night that Burk had been attacked and robbed. One such piece of evidence was a security

2

videotape from a convenience store near Burk's house—Joe's Future Food Mart. The State called store employee Mahawattage ("Harry") Don Dhanushka to authenticate the videotape. Using the videotape and Harry's testimony, the State purported to show that Razo's cousin was an employee at Joe's Future Food Mart and was working while the store was robbed. Over Razo's objection, the videotape was admitted in evidence. After hearing all of the evidence, the jury sentenced Razo to thirty-five years in prison.

### III. DISCUSSION

#### A. Double Jeopardy

In his first issue, Razo contends that his double jeopardy rights were violated by the State's subsequent prosecution after having intentionally provoked Razo into moving for a mistrial. Specifically, Razo argues that the trial court abused its discretion by finding that the State did not intend to provoke Razo into moving for a mistrial by eliciting responses from witnesses that alluded to extraneous offenses. We disagree.

Pursuant to pretrial motions in limine in Razo's trials, the State was prohibited from referencing, commenting on, or arguing the existence of any extraneous offenses during the guilt-innocence phases of both trials. At his first trial, Razo made multiple requests for a mistrial based on four different instances in which the State's witnesses allegedly referred to extraneous offenses. The

3

first instance occurred on redirect examination during an exchange between the prosecutor and Burk about the alleged attack:

[Prosecutor]: When they were hitting you, did you get knocked out?

[Burk]: Yeah. In other words, just it all happened so sudden. I mean, it [was] just one of those things that I wasn't looking forward to.

[Prosecutor]: Oh, I bet you weren't.

[Burk]: It['s] just that now -- if like what -- they just came from another house.

[Prosecutor]: Well, let's just -- let's -- just talk about you right now.

Outside the presence of the jury, defense counsel then objected to Burk's comment that the intruders had just left from another house. Razo also argued that the prosecutor's instruction to "just talk about [Burk] right now" further alluded to the presence of other offenses. After continued disagreement, the court sustained Razo's objection, instructed the jury to disregard Burk's response, and denied the motion for mistrial.

Razo's second objection to an alleged reference to extraneous offenses followed an exchange between the prosecutor and crime scene officer Christopher Bain regarding Bain's response to dispatch's report of the alleged robbery:

[Prosecutor]: So when you got the call, what did you do?

[Bain]: Well, I started driving towards the first location until they diverted me. So then I drove to the second location. I believe it was at Hart --

4

Again outside the presence of the jury, Razo objected to Bain's response on the basis that he alluded to an extraneous offense. But the prosecutor explained that the two locations Bain had referred to were connected to the same robbery, and Razo withdrew his objection.

Razo's third objection came during direct examination of Detective Kyle Sullivan, who had been assigned to investigate the robbery the night of the offense:

[Prosecutor]: Why were you interested in their clothing?

[Sullivan]: Well, I knew that on one particular case --

Razo immediately objected and requested a mistrial, arguing that Sullivan's statement was nonresponsive and that it referred to extraneous offenses. Again the prosecutor disagreed and argued to the contrary, adding that he had already instructed Sullivan to only talk about the case at hand.

Next the court allowed the prosecutor to go through his intended line of questioning with Sullivan outside the presence of the jury so that the court and Razo would know what the prosecutor was intending to illicit from the witness. After this line of questioning, the prosecutor and the court made clear that all the witnesses had previously been instructed not to talk about any other extraneous offenses and that the witnesses should only talk about the case at hand. Back in the presence of the jury, the court sustained Razo's objection and denied his motion for mistrial.

5

The fourth and final incident followed an exchange between the prosecutor and Officer Kevin Capps, who assisted Detective Sullivan with searching Razo's vehicle after it had been impounded:

> [Prosecutor]: While you were there, was there anyone else present with Detective Sullivan?

> [Capps]: Detective Sullivan was accompanied by Mr. Burk who at that time was identified as one of the victims.

Razo then interrupted the prosecutor's next question to raise yet another nonresponsiveness objection. Outside the presence of the jury, defense counsel requested a mistrial, arguing that Capps's reference to "one of the victims" alluded to an extraneous offense. Noting that the prosecution had been warned several times and that there was a motion in limine that had been violated, the court granted the defense's motion for mistrial.

Before the proceedings ended, the prosecutor asked for and received a ruling from the court that he had not acted intentionally and that he had complied with the court's orders regarding instructions to his witnesses. Although the prosecutor continued to try to persuade the court to deny Razo's motion for mistrial, the court confirmed that the mistrial was granted and ended the proceedings.

### 1. Standard of Review

In reviewing a trial court's ruling that the State did not intentionally provoke a defendant to move for a mistrial, we view the evidence in the light most

6

favorable to the trial court's ruling and will uphold the decision absent an abuse of discretion. *Ex parte Masonheimer*, 220 S.W.3d 494, 507–08 (Tex. Crim. App. 2007); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006).

### 2.     Applicable Law

The double jeopardy provisions of the federal and Texas constitutions protect a citizen from repeated attempts at prosecution for the same criminal offense. U.S. Const. amend. V; Tex. Const. art. I, § 14; *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982); *Wheeler*, 203 S.W.3d at 322. But if a defendant requests a mistrial, double jeopardy normally does not bar reprosecution. *Kennedy*, 456 U.S. at 672–73, 102 S. Ct. at 2088. When a trial court grants a defendant's motion for mistrial, retrial is barred only if the prosecutor intentionally caused the mistrial. *Id.* at 675–76, 102 S. Ct. at 2089; *Ex parte Lewis*, 219 S.W.3d 335, 370–71 (Tex. Crim. App. 2007) (adopting *Kennedy* standard for determining when to grant double jeopardy relief under Texas constitution after a defense-requested mistrial and overruling *Bauder v. State*, 921 S.W.2d 696, 698–99 (Tex. Crim. App. 1996), which barred retrials when the prosecutor was aware but consciously disregarded the risk that his conduct would require a mistrial at the defendant's request).

The exception to the general rule that double jeopardy protections do not bar a retrial when the defense requested a mistrial is "narrow." *Kennedy*, 456 U.S. at 673, 102 S. Ct. at 2088; *see also Masonheimer*, 220 S.W.3d at 506.

7

Thus, prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *Kennedy*, 456 U.S. at 675–76.

Trial courts are in the best position to determine whether a prosecutor's conduct evinces intent to cause a mistrial, and Texas provides defendants with the opportunity to litigate the question in the trial forum. *Lewis*, 219 S.W.3d at 362. Accordingly, the Texas Court of Criminal Appeals has stressed the importance of deferring to the trial court's assessment of facts, including the prosecutor's state of mind. *See Wheeler*, 203 S.W.3d at 322–24; *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Lewis*, 219 S.W.3d 335.

### 3. Analysis

Razo points to four instances that collectively amounted to the prosecutor's alleged intentional provocation of Razo's request for a mistrial. Viewing the evidence in the light most favorable to the verdict, Razo conceded that the first instance did not involve intentional conduct and that the second instance did not involve a reference to an extraneous offense. After the third instance, the prosecutor led the witness through a series of questions outside the jury's presence to make sure that the witness did not say something that he should not.

8

As for the fourth incident, the prosecutor merely asked whether anyone else was present at the scene, and therefore did not elicit the witness's response as to *why* one of the persons was present.

Further, the prosecutor had instructed all of his witnesses to only discuss the case at hand; and even after the trial court granted Razo's motion for mistrial, the prosecutor continued to attempt to persuade the court that a mistrial was improper. Most importantly, the trial court ruled, without objection, that the prosecutor did not intentionally provoke Razo into moving for a mistrial.

Thus, the trial court did not abuse its discretion in ruling that the prosecutor did not intentionally provoke Razo to move for a mistrial because the prosecutor took steps to avoid any discussion of extraneous offenses, the witnesses' references to extraneous offenses were nonresponsive as to the prosecutor's questions, and the prosecutor repeatedly resisted the granting of the mistrial. *See Ex parte Washington*, 168 S.W.3d 227, 238–39 (Tex. App.—Fort Worth 2005, no pet.) (concluding that prosecution did not intentionally provoke mistrial so as to bar retrial when defense-requested mistrial was prompted by nonresponsive answers of prosecution's witnesses and prosecution had instructed witnesses not to gratuitously mention impermissible evidence). Giving the appropriate deference to the trial court's ruling, we hold that the trial court's granting of a mistrial at the defendant's request did not bar a retrial and that

therefore Razo's double jeopardy rights were not violated. Razo's first issue is overruled.

### B. Sufficiency of the Evidence

In his second issue, Razo contends that there is insufficient evidence to support his conviction for aggravated robbery. A person commits the offense of robbery if, in the course of committing a theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). The offense becomes aggravated if the person committing robbery uses or exhibits a deadly weapon, or causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death if the other person is 65 years of age or older. *Id.* § 29.03(a)(2), (3)(A) (West 2011). Razo does not dispute that an aggravated robbery occurred; rather, he contends that the evidence is insufficient to identify him as one of the perpetrators. We disagree.

#### 1. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

10

307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting interests in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13. Each

11

fact need not point directly and independently to the guilt of the defendant as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Further, the prosecution need not exclude every other reasonable hypothesis except the guilt of the accused. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *see also Merritt v. State*, No. PD-0916-11, 2012 WL 1314095, at *10 (Tex. Crim. App. Apr. 18, 2012) (holding that appellate court improperly acted as thirteenth juror in sufficiency of evidence review when it speculated and focused on existence of a reasonable hypothesis inconsistent with guilt of accused).

### 2. Analysis

Viewing the evidence in the light most favorable to the verdict, the record demonstrates that at least two intruders came into Burk's home and attacked him. When police officers arrived at Burk's house, they discovered that his truck was not there; the garage door was busted in and broken; the house was ransacked; and there was blood in the hallway, bathroom, and bedroom. Police officers stopped Razo a few hours after Burk was assaulted and robbed and discovered that Razo had blood on his jacket that was later determined to be Burk's. Burk's saxophone, miscellaneous tools, and personal mail were in the trunk of the car Razo was driving. The officers also found bloody gloves on the seats and a pistol, the handle of a trench knife, and Burk's Social Security card in the pocket of one of the other occupants in the car. Finally, a shoe print taken

12

from the broken door was later found to have enough individualizing characteristics for a trace evidence analyst to conclude that the print probably came from the shoes Razo was wearing the night he was arrested. Thus, the combined and cumulative force of all the incriminating circumstances permits the reasonable inference that Razo was one of the perpetrators.

To support Razo's contention that there is insufficient evidence to identify Razo as one of the perpetrators, Razo points to the facts that Burk was unable to identify Razo in a photo line-up and that Burk initially described the suspects as black or dark-skinned.[2] But Burk, at eighty-five years old, was attacked in the very early morning while he was asleep and was beaten to the point that his eyes were swollen shut. It is reasonable to assume that Burk's recollection of the appearance of his assailants could be inaccurate, and such a discrepancy does not render the jury's finding improper in light of the additional evidence linking Razo to the crime.

Razo also argues that there is a possibility that the two other occupants in the car committed the robbery and later met up with Razo because the victim said there were only two assailants and because one of the occupants in the car was the one found with the revolver, the handle of the trench knife, and Burk's Social Security card. Razo further hypothesizes that Burk's blood could have gotten on Razo's jacket if either of the other two occupants of the car "disdainfully

---

[2] Razo asserts that there is no evidence he is either black or dark-skinned.

13

tossed" the gloves at Razo after they committed the robbery. But it is the jury's prerogative to weigh the evidence and choose between conflicting theories of the case, and they were free to decide whether to believe Razo's theory.

Thus, a rational trier of fact could have found beyond a reasonable doubt that Razo committed the aggravated robbery based on the evidence that the shoe print on Burk's door was probably Razo's; Razo was driving a car containing Burk's possessions; and Burk's blood was on Razo's jacket the night of the robbery. We hold that the evidence was sufficient to support Razo's conviction. *See Terry v. State*, No. 05-08-00165-CR, 2009 WL 1240132, at *2–3 (Tex. App.—Dallas May 7, 2009, pet. dism'd) (not designated for publication) (holding evidence sufficient to support aggravated robbery conviction due to small blood stain on defendant's shoe matching victim's blood and bloody footprint at scene with similar tread to that on defendant's shoe). Razo's second issue is overruled.

### C. Admissibility of Videotape

In his third issue, Razo contends that the trial court erred by admitting the security videotape from Joe's Future Food Mart due to improper authentication. Specifically, Razo argues that Harry was not the proper witness because he was not present when the alleged robbery occurred and had no specialized knowledge regarding the maintenance of the camera.

14

We review a trial court's ruling on authentication issues under an abuse of discretion standard. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998); *Reavis v. State*, 84 S.W.3d 716, 719 (Tex. App.—Fort Worth 2002, no pet.). This standard requires an appellate court to uphold a trial court's admissibility decision if it is within the zone of reasonable disagreement. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

Texas Rules of Evidence 901 establishes the authentication requirement for the admissibility of evidence. *See* Tex. R. Evid. 901; *Angleton*, 971 S.W.2d at 67. The authentication requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). Additionally, Rule 901(b) provides a nonexclusive list of methods to authenticate evidence. Tex. R. Evid. 901(b). One such method is the testimony of a witness with knowledge that a matter is what it is claimed to be. Tex. R. Evid. 901(b)(1).

In *Reavis v. State*, we held that a trial court did not abuse its discretion by admitting a security videotape in evidence even though the authenticating witness—a store clerk—had not personally witnessed the events depicted on the videotape. *Reavis*, 84 S.W.3d at 719–20. The clerk testified that he loaded the videotape and pressed "record" the day of the offense, he removed the videotape shortly after the offense and reviewed it with police officers, and he reviewed it again before trial to ensure that it had not been tampered with or altered. *Id.*

The witness made no reference to any specialized knowledge regarding the maintenance of the camera. *See id.* at 718*.* We held that this was sufficient evidence to enable a reasonable juror to conclude the videotape was what the State claimed it to be. *Id.* at 718–19.

Here, Harry testified that the videotape security system properly and accurately records the events that happen inside the store, he helped the police officer locate the part of the tape the officer was looking for on the day of the offense, he recognized his coworkers and various items inside the store on the videotape, and he reviewed the videotape before trial. The only distinction with *Reavis* is that Harry did not actually start the recording the day of the offense, but there is no evidence to suggest that the store's videotape security system required a manual start to begin recording. Moreover, both Harry and the certified forensic computer examiner who extracted the videotape from the store's security system testified that the system was working properly and that the time depicted on the videotape was accurate other than being off by one hour. Thus, Harry had sufficient knowledge of the videotape security system to testify that the videotape accurately depicted the events that occurred in the store on the day of the robbery.

Following our reasoning in *Reavis*, the evidence was sufficient to support a finding that the videotape was what the State claimed it to be, and therefore the videotape was properly authenticated. Thus, the trial court did not abuse its

16

discretion by admitting the videotape in evidence, and we overrule Razo's third issue.

## IV. CONCLUSION

Having overruled each of Razo's issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 9, 2012