**STATE of Missouri, Appellant,**

v.

**Markus D. LEE, Respondent.**

**No. WD 71924.**

Missouri Court of Appeals,
Western District.

June 7, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 5, 2011.

Application for Transfer
Denied Aug. 30, 2011.

**866**

Michael Joe Hunt, Kansas City, MO, for appellant.

Ruth Sanders, Kansas City, MO, for respondent.

Before Division One: THOMAS E. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

The State of Missouri appeals the judgment of the Circuit Court of Jackson County dismissing the State's prosecution of Markus D. Lee with prejudice.

### Statement of Facts

Markus Lee was charged in the Circuit Court of Jackson County with one count of murder in the first degree, three counts of assault in the first degree, four counts of assault of a law enforcement officer in the first degree, and eight counts of armed criminal action. The circuit court dismissed Mr. Lee's criminal charges with prejudice following a mistrial that the court had earlier granted as a result of an improper statement made during the testimony of a State's witness.

The State is entitled to appeal a judgment in favor of a criminal defendant only where the right is expressly conferred by statute and where no double jeopardy can result. *See* section 547.200.2 RSMo;[1] *State v. Casaretto,* 818 S.W.2d 313, 315–16 (Mo.App.1991). The double jeopardy clause of the Fifth Amendment of the United States Constitution protects a criminal defendant from being prosecuted more than once for the same offense. *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). If, during the trial of a case, the defendant requests a mistrial, the prohibition against double jeopardy may bar the re-prosecution of the defendant if the defendant's request for a mistrial was brought about as a result of prosecutorial misconduct that was intended to provoke the defendant into moving for a mistrial. *See id.* at 676, 102 S.Ct. 2083.

Mr. Lee's case proceeded to a jury trial on November 9, 2010. The factual background of the prosecution involved a shooting event which took place on March 5, 2007. The prosecution alleged that the defendant was a participant with a group of people seated in a parked car from which gunfire erupted across the street into a tire shop. Following the shooting, police officers chased the vehicle from which the gunfire apparently came. The occupants of the vehicle, being pursued, fired at the police chasing the vehicle.

---

1. Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2010 Cumulative Supplement.

Three men were apprehended after the suspect's vehicle crashed.

During the prosecution of the case, Detective Danny Phillips of the homicide unit took the stand. Detective Phillips testified concerning the scene of the car crash at the end of the pursuit. Detective Phillips was involved in the collection of evidence there. Detective Phillips was asked if he had further involvement in the case. He testified that he had contact with the suspects on March 28, 2007. The prosecutor inquired as to the identity of the suspects, and Detective Phillips said, "Their names are Markus Lee, sitting at the defense table in the white, a fellow by the name of Richard Cooper, and Rayshawn Taylor." He said that he collected buccal swabs from Mr. Lee, Mr. Cooper, and Mr. Taylor and sent the swabs to the lab.

On cross-examination, defense counsel asked Detective Phillips to clarify whether he took Mr. Lee's DNA sample some weeks after the incident. Detective Phillips answered, "Right," and then said, "I knew him prior." The testimony was as follows:

Q. Detective, you're actually the first officer today who has referenced Markus Lee at all, but I want to be clear. You were not involved in his arrest, correct?

A. No.

Q. This was collecting the DNA sample from him several days after this incident we're talking about, a couple of weeks, March 28th?

A. Right, I knew him prior.

Defense counsel immediately objected to the statement concerning the officer's prior knowledge of Markus Lee and moved the court to declare a mistrial. The trial court, without asking for a response from the prosecution, granted the mistrial request. The trial judge then turned to Detective Phillips and admonished him:

Detective Phillips, you know better than that. I can't believe what I heard. I want to call Sergeant Bernard and inform him that we wasted now four days of trial time. We were two hours away from submitting this case to a jury. If I can, I'm going to find a way to submit the charges for this trial to the Kansas City Police Department for the waste of time, the waste of taxpayers' money. We'll be back here for trial November 30th. If you testify, I don't expect something like that to happen again.

Detective Phillips responded, "Yes, sir." The jury was then dismissed. In the trial court's minutes, the court stated that the mistrial was granted because Detective Phillips's "improper, inexcusable comment in front of the jury left this court with no alternative than to declare a mistrial."

On November 20, 2009, defense counsel filed a motion on behalf of the defendant asking the court to dismiss Mr. Lee's criminal case with prejudice. The court conducted a hearing on that motion on November 25, 2009. At the hearing, defense counsel, Molly Hastings, testified that she represented Mr. Lee at trial. She testified also that she spoke with Detective Phillips in the hallway and in the witness room before he testified. She stated that when she introduced herself and told him she wanted to find out what his testimony would be, Detective Phillips said in a joking manner, "You mean, that I would testify that Markus is guilty?" The defense also presented the testimony of a public defender intern. Over the State's objection, the intern testified that he heard a juror state that all fifteen jurors and alternates had taken a straw poll and that all fifteen of them would have voted to acquit Mr. Lee.

Defense counsel asked the court to take judicial notice of a prior mistrial event in

which a different Kansas City Missouri Police Department detective made an unnecessary comment that resulted in a mistrial. The trial judge did take note of that event and added that "quite honestly, I've had that stuck in the back of my mind since that time. So, it's kind of a backdrop against which we are doing these things."

Defense counsel argued that especially because the case was a high profile one that affected so many police officers, it was unrealistic to think that the officers congregating in the hallway did not discuss how the trial was going. The defense pointed out that Detective Phillips never explained why he made the comment and stated that Detective Phillips did not "appear to be particularly disturbed or apologetic about what he did," but rather sat and stared at Mr. Lee while the court was admonishing him. Defense counsel argued that if the comment had been inadvertent, Detective Phillips would not have behaved in that manner. Defense counsel further argued that unless the court granted the dismissal with prejudice, there would be no incentive for the police to stop causing mistrials in weak cases to give the State a chance to try the case again.

The State did not dispute defense counsel's description of Detective Phillips's comment in the hallway or his behavior on the stand but argued that the court could not dismiss the case with prejudice, because the mistrial was caused by a police officer, not a prosecutor, and because the defense had not proven that Detective Phillips meant to cause a mistrial.

The court granted the motion to dismiss with prejudice. It concluded that the State's interpretation of governmental misconduct was too narrow and that a dismissal with prejudice was necessary. The court stated as follows:

If law enforcement, without any indication from the prosecutor's office or the State or anybody else, if they think the case is going south, they can say something inappropriate that could scuttle the trial, as happened in this division twice within the last three months, say something inappropriate from that witness stand designed, I think, to inappropriately influence this jury or any jury.

I just can't allow that to happen. I think that flies in the face of our obligation to ensure a fair and level playing field. And as has happened twice in the last three months, I've been forced to declare a mistrial, which I think, especially in this case, gives the prosecuting attorney, the State, an opportunity to maybe bone up a weak case, an admittedly weak case.

I think it gives the State an unfair tactical advantage. I think it gives them an opportunity to make their case on the second go-around, no matter what it was in the first go-around. And it denies the defendant the opportunity, I think, to have his case heard to completion by the first tribunal impaneled to hear that case and as so happened in this case, a favorable tribunal and panel to hear that case.

The court stated that it had no doubt that Detective Phillips's conduct was intended to goad the defense into requesting a mistrial. The court indicated that it considered police conduct to be "state action," but mentioned to the prosecutor, "I certainly don't think you intended for this to happen. I think you are as aggravated and as angry about the mistrial as I am."

The court issued a supplement to its judgment on November 30, 2010. It concluded that the State's argument that the double jeopardy clause was not implicated in these circumstances was incorrect:

Police conduct is deemed to be governmental conduct in 42 U.S.C. section 1983 jurisprudence. *Brewer v. Trimble*, 902 S.W.2d 342 (Mo.App. S.D.1995), *Mil-*

ler v. Smith, 921 S.W.2d 39 (Mo.App. W.D.1996). In the context of the Fourth Amendment and search and seizure law, police conduct is considered to be governmental conduct. *State v. Collett*, 542 S.W.2d 783 (Mo. banc 1976). In the context of Fifth Amendment arrest and confession jurisprudence, police conduct is deemed to be governmental conduct. *State v. Ward*, 745 S.W.2d 666 (Mo. [banc] 1988), *State v. Kelly*, 439 S.W.2d 487 (Mo. [ ] 1969). Likewise, in the context of *Brady* [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] violations, members of the police department are considered governmental actors in the prosecution of a criminal case.

The court further stated:

> The misconduct is the same as if it were done by the prosecutor or the court. The defendant is still left with the proverbial Hobson's choice—which is no choice at all. The defendant can chose to continue with a tainted jury and risk conviction due to the improper evidence or he can choose to request a mistrial and forego the right to have his case tried before a particular tribunal, a tribunal of his choosing and to his liking as the decision maker, and his right to be free from successive prosecutions for the same offense. Those are the rights the double jeopardy clause is meant to protect.

The court went on:

> There is no doubt in the court's mind that the detective's conduct was intentional, and further, that it was in an effort to goad the defense attorney into requesting a mistrial. Detective Phillips is a veteran detective of over fifteen years. He has testified in this courthouse on many occasions. He has been to the police academy and to detective school. He is instructed by the legal office of the Kansas City Missouri Police Department relative to testifying in criminal cases. A reasonable inference can be made that he is well aware of testimony that is admissible and testimony that is not admissible: particularly something as basic as a criminal defendant's prior police contacts or arrests. A reasonable inference can also be made that he, along with all of the State's witnesses were made aware of this court's rulings with regard to the defendant's motion in limine.

> The court also takes into consideration his manner while testifying and the circumstances relating to his testimony. The comment that prompted the request for a mistrial was completely gratuitous and non-responsive to any question. The question called for a yes or no response. Detective Phillips answered, "Right," then paused for a moment as if contemplating the gravity of what he was about to say and offered the offending statement: "I knew him prior." After the jury was excused and a brief record was made, Detective Phillips was given and had an opportunity to apologize or explain his actions, and he did not. He showed no contrition or acknowledgement of any wrongdoing and, in fact, simply stared at the defendant. Lastly, this conduct comes on the heels of a similar incident in this courtroom merely three months ago when another murder case was mistried because a Kansas City Missouri homicide detective engaged in the exact same behavior. When asked a yes or no question about a police photo array containing the defendant, she offered that the photos were from prior arrests. It defies credibility to think that that mistrial of that murder case was not a topic of conversation in the homicide unit of the Kansas City Missouri Police Department. This is especially so given the fact that this court was assured by the prosecutor

who tried the case that she had a word with members of that Department.

The State now appeals the trial court's dismissal of the prosecution with prejudice. The State contends the trial court erred in granting a dismissal with prejudice in a criminal case when the trial court reasonably believed that the police officer, on cross-examination, intentionally mentioned previous contact with the defendant in order to provoke a mistrial.

The trial court believed that Detective Phillips thought the trial was not going well and actually hoped to cause a mistrial. The court did not think the prosecuting attorney wanted a mistrial, but that the officer, acting alone, wanted to cause a mistrial. Defendant moved for mistrial after Detective Phillips's statement, and the mistrial was granted. The defense then moved the court for an order dismissing the prosecution with prejudice at a later hearing on the matter, and the court granted the motion. The State appeals, contending that the court erred in granting dismissal with prejudice.

## Standard of Review

The issue as to whether the trial court has authority to dismiss a case with prejudice based on the unsponsored, unsolicited misconduct of a government witness is a legal issue to be decided *de novo. State v. Smith*, 988 S.W.2d 71, 75 (Mo.App.1999). If it is determined that the trial court has such authority, then this court must consider whether the decision to grant a dismissal with prejudice was an abuse of discretion. *State v. Sprinkle*, 122 S.W.3d 652, 658 (Mo.App.2003).

## Analysis

We accept the trial court's understanding of the factual circumstances, including the conclusion that the officer's intent was to provoke a mistrial and that the prosecuting attorney played no role in causing the offending remark to be made.

The record suggests that the remark by Detective Phillips was intentional. The trial court believed that it was intentional and that the purpose of the intentional misconduct was to provoke a mistrial. Because the trial judge was in the best position to make that determination, and because the court cited logical reasons to support that conclusion, we will defer to the trial judge's determination. *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008) (finding decisions regarding mistrials are within the discretion of the trial court, as it is in the best position to make such a determination). We accept the trial court's conclusions in this regard. We also accept the trial court's belief that the assistant prosecuting attorney in no way sponsored or solicited the offending remark, which came during the defense cross-examination of the witness.

■ The offending witness, as an officer employed by the Board of Police Commissioners, is subject to discipline, including possible dismissal. *See* sections 84.500, 84.610 RSMo.; *Kendrick v. Bd. of Police Comm'rs*, 945 S.W.2d 649, 654 n. 4 (Mo. App.1997). Also, a trial court has power to punish by its contempt power for the willful and substantial disruption of proceedings in the immediate presence of the court. Rule 36.01; sections 476.130 and 476.140 RSMo. *See, e.g., State ex rel. Picerno v. Mauer*, 920 S.W.2d 904 (Mo.App. 1996), and *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573 (Mo. banc 1994). The issue of the availability of such contempt power is not invoked here and, therefore, is not specifically addressed. But certainly a court need not regard its hands as entirely restrained from taking action against a witness when there is willful, purposeful, and defiant interference with the administration of justice. A court

may take such authorized actions as it may deem necessary to protect the integrity of the proceedings and the cause of justice, including, presumably, in addition to the exercise of any lawful contempt power, the barring of the testimony of a particular witness, or the striking of such testimony. Detective Phillips and any other rogue witness should take a note from this case that, regardless of our decision in this case, the trial court continues to have resources and authority at its disposal, and some may yet be exercised.

In any event, however, without involvement by the prosecution in the misconduct in this case, there is no authority to support the notion of the trial court's authority to grant a dismissal with prejudice. *State v. Barton*, 240 S.W.3d 693, 702 (Mo. banc 2007) (such a dismissal may be granted only when there is evidence of *prosecutorial* misconduct, *and* when the misconduct was intended to subvert an impending acquittal of the defendant of which the prosecutor was aware). The officer's misconduct cannot be attributed to the State without involvement by the prosecution's counsel. Here, the trial court specifically found that the prosecution was not involved in the solicitation of Detective Phillips's remark. In fact, the prosecution's counsel was not even examining the witness when the testimony was elicited.

Despite the trial court's effort to equate the officer's misconduct to prosecutorial misconduct, we find no authority for the proposition that a court is authorized to dismiss a prosecution with prejudice based on the unsponsored rogue act of a police officer witness.

■ On the streets, and in its regular investigative and enforcement functions, the law officer represents the State; but in the State's prosecution function in the courtroom, the State is represented solely by the prosecuting attorney. *See State v. Walton*, 899 S.W.2d 915, 918–19 (Mo.App.

1995) (finding the prosecutor, rather than a witness, is "the state's advocate," and in his or her position, "uniquely represents the state, both in his [or her] role at trial and in the minds of the jury"). The prosecuting attorney initiates and controls the prosecution. *State v. Honeycutt*, 96 S.W.3d 85, 89 (Mo. banc 2003); *Barlow v. State*, 250 S.W.3d 725, 732 (Mo.App.2008) ("[T]he [prosecution] performs the function of representing the interests of the state ... and choosing to initiate and pursue an action.").

■ The cases generally do not differentiate between police witnesses and other witnesses and do not concern themselves with the good faith or bad faith of the witness. A witness is a witness, regardless of the uniform worn. *Cf. State v. Presberry*, 128 S.W.3d 80, 89–90 (Mo.App. 2003) (like other lay witnesses, police identification testimony cannot be based solely on a perception of the same evidence and facts available to the jury). A law enforcement officer may testify as a witness when summoned and questioned by the prosecution, but the officer's status in the courtroom when summoned to testify is simply that of witness. *Cf. Briscoe v. LaHue*, 460 U.S. 325, 342, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (as to the issue of immunity as to section 1983 claims, "[a] police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury"). Therefore, we do not conclude that the unsolicited misconduct of an officer has any more significance for double jeopardy purposes than the unsolicited, errant remark of any other witness. *See Ex parte Washington*, 168 S.W.3d 227, 237–38, 238 n. 3 (Tex.App. 2005) (listing state and federal cases addressing the issue of whether a witness's

(including a police officer's) state of mind should be attributed to the prosecution for the purposes of Fifth Amendment analysis, and noting that all reject such imputation).

Of course, many mistrials have been granted as a result of prejudicial statements made in court by a police witness. However, courts have refused to conclude that a possible violation of the double jeopardy clause is presented when the defense has claimed that the police officer witness was in control of the prosecution, or has argued that the unsolicited police misconduct should be attributed to the prosecution on the theory that the police witness is part of the prosecution. *See, e.g., United States ex rel. Clauser v. McCevers,* 731 F.2d 423, 431 (7th Cir.1984); *Rogers v. Goord,* 371 F.Supp.2d 348, 354–55 (W.D.N.Y.2005); *State v. Wittsell,* 275 Kan. 442, 66 P.3d 831, 839 (2003); *see also Ex parte Washington,* 168 S.W.3d at 237–38. This is an issue of first impression in Missouri, however, and while the cases here mentioned are not controlling on this court, we find them persuasive.

In *Clauser,* the petitioner, while admitting that the prosecutor himself engaged in no wrongdoing, contended that the misconduct on the part of the police witnesses [2] before the grand jury should be attributed to the prosecutor for purposes of the court's Fifth Amendment double jeopardy analysis under *Oregon v. Kennedy. Clauser,* 731 F.2d at 431. The Seventh Circuit refused to adopt this position. *Id.* The court stated, "The defendant does not cite any authority in support of the proposition that in the double jeopardy context, illicit police conduct, outside the knowledge of the prosecutor, can and must be attributed to the prosecutor. We are simply not willing to take that first step."

*Id.* In concluding, the court held that the conduct of law enforcement officers before a grand jury, involving intentional or negligent misrepresentations, should not be attributed to the prosecutor where "that officer's misconduct was beyond the prosecutor's knowledge and control." *Id.*

The Kansas Supreme Court used similar reasoning in *Wittsell.* In that case, during cross-examination, a police detective intentionally mentioned the defendant's polygraph test, which was to be excluded based on pretrial motions in limine. *Wittsell,* 66 P.3d at 835. Defense counsel objected, and the trial court immediately declared a mistrial *sua sponte. Id.* The defendant argued the trial court should dismiss the case under the double jeopardy clause, because the detective was acting as an agent of the state and his misconduct should be imputed on the prosecution. *Id.* The trial court granted the defendant's motion, finding the detective an agent of the State because he was the "assigned case detective," not just a police officer with incidental contact to the case, citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.* at 836–37.

Citing *Clauser,* the Kansas Supreme Court agreed that the police officer was an agent of the state, but, following the *Kennedy* decision, refused to impute the conduct of the detective on the witness stand to the prosecution or to apply *Brady* in this context. *Id.* at 837–39. The court reasoned that because the prosecution did not elicit or provoke the officer's testimony, as the officer was being cross-examined by defense counsel (just like the case before this court), and because there was no evidence of bad faith on the part of the

---

**2.** At trial, it became apparent the officers had misrepresented evidence during the grand jury hearing. *Clauser,* 731 F.2d at 424. However, the judge did not believe the officers had intentionally lied, but rather characterized their conduct as "grossly negligent" or "grossly careless." *Id.*

prosecution, the officer's conduct should not be imputed. *Id.*

Finally, in *Rogers v. Goord,* where a police officer made an unsolicited comment that the defendant had asked for an attorney, it was also claimed that the officer's wrongful comment should be imputed to the prosecution. 371 F.Supp.2d at 354–55. In that case, the court noted that the record did not support the inference that the *prosecutor* was guilty of misconduct. The court noted that the trial judge in that case, who (like the judge in this case) was angry, reserved his disapproval "for the police officer, not the prosecutor." *Id.* at 354. The court therefore rejected the petitioner's claim that the double jeopardy clause might afford a basis for relief. *Id.* at 354–55.

■ Regardless of Detective Phillips's status as an agent of the state, we find absolutely no authority for the proposition that his misconduct as a government witness must be attributed to the prosecution for purposes of the double jeopardy clause, and Lee provides none. Instead, we find *Clauser, Wittsell,* and *Goord* persuasive, and we decline the invitation to impute Detective Phillips's misconduct to the prosecution. Here, just like the prosecution in *Clauser, Wittsell,* and *Goord,* the prosecution was found by the trial court to be devoid of any involvement in the solicitation of Detective Phillips's odious comment. In addition, just like *Wittsell,* where the defense counsel was in the process of cross-examining the police officer witness when the inappropriate comment was elicited, defense counsel here was cross-examining Detective Phillips when he declared he knew Lee prior to the trial. Because there is no evidence of bad-faith conduct on the part of the prosecution, and Phillips's misconduct was beyond the prosecutor's knowledge and control, we will not impute his illicit conduct on the prosecution in a mischaracterization of *Kennedy*

and the purpose of the double jeopardy clause.

In addition, Lee asked for the mistrial. When a potentially prejudicial event occurs during the course of a trial, it is up to the defendant to decide whether to give up the trial before that jury and ask for a mistrial, or to instead ask for corrective relief and continue the same proceeding before the same jury. *See State ex rel. Kemper v. Vincent,* 191 S.W.3d 45, 51 (Mo. banc 2006). Here, the mistrial was not granted *sua sponte* or at the request of the prosecution, but was instead granted at the request of the defense. Generally, the double jeopardy bar is not implicated when a mistrial is granted *on the request of the defendant,* as the defendant has exercised a choice to abandon the proceeding and allow the case to be started over. *See, e.g., United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Kemper,* 191 S.W.3d at 51 ("If a defendant requests or consents to a mistrial, double jeopardy will not bar reprosecution." (*citing United States v. Jorn* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion))); *State v. Tolliver,* 839 S.W.2d 296, 299 (Mo. banc 1992); *State v. Fitzpatrick,* 676 S.W.2d 831, 835 (Mo. banc 1984); *accord Kennedy,* 456 U.S. at 670, 102 S.Ct. 2083. There is an exception to that principle that occurs when the defense request was motivated by "governmental conduct which is intended to 'goad' the defendant into moving for a mistrial." *Kemper,* 191 S.W.3d at 51; *Fitzpatrick,* 676 S.W.2d at 835.

Besides the fact that the trial court's findings do not indicate any deliberate effort by the prosecution to provoke a mistrial request, we also note that a mistrial was not manifestly necessary here, and yet the defense chose to request a mistrial declaration as opposed to seeking other relief. In this case, the defendant request-

ed the mistrial declaration though there was no necessity for the court to grant a mistrial. This is not a case in which there was such powerful prejudicial effect to the officer's remark that it was obvious to all concerned that there was absolutely no realistic hope of redeeming the proceedings and continuing the trial to a conclusion. Here, the remark of the officer that he had prior contact with the defendant was not such as to put the defense in the position of having to ask for a mistrial declaration, and did not put the trial court in the position of having to declare a mistrial. *See State v. Fassero,* 256 S.W.3d 109, 115 (Mo. banc 2008) (stating "[w]hether or not there is manifest necessity sufficient to justify mistrial is a case-specific inquiry," but such a finding will typically be reserved for something as serious as the jury not being able to reach a verdict).

■ "A mistrial is a drastic remedy which should only be granted where the incident is so grievous that the prejudicial effect can be removed in no other way." *Countryman v. Seymour R–II School Dist.,* 823 S.W.2d 515, 518 (Mo.App.1992). The statement of the witness in this case that he "knew [Lee] before" is not necessarily so fraught with risk of great prejudice as to be beyond the ability of the court to cure that risk. *See, e.g., Barton,* 240 S.W.3d at 702–03 (finding no abuse of discretion in overruling defendant's motion for mistrial when a police officer referenced the defendant's exercise of his *Miranda* rights, because trial court granted adequate relief by sustaining the objection and admonishing the jury to disregard the testimony); *State v. Williams,* 606 S.W.2d 777, 778 (Mo.1980) (finding no abuse of discretion in overruling defendant's motion for mistrial when a police officer testified regarding witness identification of the defendant in a lineup, because defense counsel's objection was promptly sustained and the jury was instructed to disregard the statement), *vacated for further consider-*

*ation on other grounds, Missouri v. Greer,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981); *State v. Jackson,* 338 S.W.2d 848, 851 (Mo.1960) (finding the trial court did not err in refusing to grant a mistrial when a police officer's inadvertent statement to the jury regarding the defendant's failure to admit guilt after being booked was stricken by the court and the jury was admonished by the court to disregard the statement in coming to its decision). It is quite feasible that the potentially prejudicial effect of Detective Phillips's comment that he knew Lee from before could have been corrected with the options available to the court. Our record fails to support the notion that there was reason for the trial court to conclude that the trial was beyond redemption at that time.

## Conclusion

This appeal does not require that we decide whether the trial court was outside of its discretion in granting the mistrial as opposed to allowing some other corrective relief. The court was in good faith in the exercise of its broad discretion, and the defense requested the mistrial declaration. We decide *only* whether the *double jeopardy clause* bars retrial *in this case* and, therefore, warranted a dismissal with prejudice.

There is no fault assigned to a trial judge for doing what it believes is right, proper, and necessary in a difficult and unusual circumstance, especially when it is at least arguable, as in this case, that the proposed action will be found authorized. Also, nothing in this opinion should be construed as prohibiting the trial court, on remand, from imposing appropriate sanction for Detective Phillips's actions (including the improper testimonial remark that was the subject of this appeal) when such actions amount to willful, purposeful, and

defiant interference with the administration of justice.

We conclude, however, that because the improper remark in question was neither sponsored, nor solicited, nor anticipated, by the prosecuting attorney, and because there was no obvious necessity to declare a mistrial, though the defense requested one (as opposed to asking for other corrective options available to the court), the court lacked authority to grant a *dismissal with prejudice.*

The court's judgment dismissing the case with prejudice is vacated, and the case is remanded to the circuit court for further proceedings.

All concur.