**STATE of Missouri, Plaintiff–Respondent,**

v.

**Craig Lamar TURNER, Defendant–Appellant.**

**No. SD 31446.**

Missouri Court of Appeals, Southern District, Division One.

June 8, 2012.

Margaret M. Johnston, for appellant.

Chris Koster, Attorney General, Jennifer A. Wideman, for respondent.

NANCY STEFFEN RAHMEYER, J.

Craig Lamar Turner ("Appellant") was charged with robbery in the first degree with a deadly weapon in violation of section 569.020.[1]  A jury subsequently con-

---

1.  All references to statutes are to RSMo 2000, and all rule references are to Missouri Court

victed Appellant of the lesser included offense of robbery in the second degree, and the trial court[2] sentenced Appellant to ten years in prison. Appellant appeals his jury conviction on the sole point that the trial court erred in denying Appellant's request for a mistrial based on a police officer's explanations that he believed Appellant "could" or "might be" the robber based on the victim's description of the robber and "possible prior contact that I've had with Mr. Turner." We find no abuse of the trial court's discretion or prejudice to Appellant, and affirm his conviction and the trial court's judgment.

### Facts and Procedural History

In February 2011, Appellant was charged with robbery in the first degree with a deadly weapon, in violation of section 569.020, as a prior offender. The robbery was alleged to have occurred in November 2010, in Pulaski County.

Appellant filed a written motion that the trial court "suppress all references ... regarding the alias/nickname of 'scenario' and that [Appellant] was 'known to the police[.]'" During a pretrial hearing on March 21, 2011, Appellant brought the motion to the court's attention. The State had no objection to the motion on the case in chief considering the person who stated to a detective that it was "scenario" who did this and when asked, "who's scenario," said, "Craig Turner," would probably not be called as a witness. The trial court granted Appellant's "motion in limine concerning scenario" as far as the State's case in chief. Appellant had only specifically requested the relief that the trial court "suppress all evidence regarding the alias ... and for any such further relief as the [trial c]ourt deems just and proper."

Appellant does not claim that the evidence was insufficient to support his conviction. Accordingly, we set forth only those facts necessary to resolve the issue Appellant raises in this appeal. We view the evidence and inferences in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Wolfe*, 344 S.W.3d 822, 825 (Mo. App. S.D.2011); *State v. Barriner*, 111 S.W.3d 396, 397 (Mo. banc 2003); *State v. Williams*, 97 S.W.3d 462, 466 (Mo. banc 2003). Viewed in this light, the evidence introduced at trial established the following facts.

Brian Salter lives in England, but, in early November 2010, was visiting family in Vichy. On the evening of November 4, 2010, a friend took Salter to St. Robert, and dropped him off at a bar called Shenanigan's. Salter intended to meet a female friend at the bar. Salter had over $500 in cash because he and the female friend intended to go shopping the next day. Salter arrived at the bar around 9:30 in the evening, and stayed until around 1:30 the following morning, which was shortly before the bar closed. Salter did not meet his friend because "[s]he wasn't able to make it." Salter had a few drinks that evening, but he was "not at all" intoxicated.

In the course of the evening, Salter met Appellant and a woman named Nicole. Salter had never met or spoken to Appellant before. Salter visited with Appellant for about 15 to 20 minutes, and bought Appellant a drink. Appellant had the opportunity to see the cash Salter had when Salter opened his wallet to pay for Appellant's drink. Appellant also told Salter Appellant's name was Craig Turner. Salter visited with Nicole for about the same length of time as he visited with Appellant.

Rules (2012), unless otherwise specified.

2. Appellant was charged as a prior offender.

Nicole offered to have sex with Salter for money, but Salter "wasn't really interested." Salter did, however, give Nicole his "cell number." Salter also "played pool with a few guys and stuff like that."

When Salter left the bar, he saw Appellant in a car "with several males." Appellant offered Salter a ride, but Salter declined because "something made me feel uneasy about the whole situation." Salter then walked to "the Waffle House to get something to eat." On the way to the Waffle House, Nicole called and sent text messages to Salter asking where he was, and again offering to exchange sex for money. Salter replied that he was at the Waffle House, and Nicole subsequently came to the Waffle House. Salter and Nicole left the Waffle House together because Nicole "said she knew a place" for Salter to get a room. The first place Nicole took Salter was full, but Salter and Nicole went to the Relax Inn and Salter took a room. Nicole entered the room with Salter, and the two of them began talking. In the course of his conversation with Nicole, Salter took off his jacket and shoes, turned on the television, and "ran a bath." Salter's wallet was in his jacket.

Nicole had "two cell phones," "was constantly . . . texting someone," and was acting "really edgy." Nicole again offered sex for pay, and Salter "kind of suggested that she leave." Nicole then unlocked the room door and let Appellant into the room.

Appellant ordered Salter, "[g]et on the floor. I'll blow your [expletive] head off." Appellant also told Salter that he had a ".22," and pressed an object into the back of Salter's head that felt like "a solid metal object." Appellant ordered Salter to crawl to his wallet. Salter could not "quite gather myself" to remember where his wallet was, and was unable to find his wallet. Appellant was "getting very agitated with

[Salter]," and Salter thought "[Appellant] was going to kill [him]."

Appellant ordered Salter to crawl into the bathroom and get into the bathtub in which Salter earlier had placed water. Appellant told Salter to "stay there or else [Appellant would] kill [him.]" Appellant then left the bathroom. Once everything was quiet, Salter got out of the bathtub, locked his exterior room door, and called the police.

Salter's jacket, wallet, passport, cell phone, and shoes were missing from his room.

Salter observed Appellant "[v]ery briefly" when he first entered Salter's room, and recognized his voice "[s]traight away." Salter was "100 percent" sure the man who entered his room was Appellant. When St. Robert police officer Daniel Cordova arrived a few minutes later, Salter identified the two persons who had robbed him as "Craig" and "Nicole." Salter also described both Craig and Nicole to Officer Cordova. Nicole had "unique" tattoos. Officer Cordova took Salter to the police station where Salter noticed a picture of Appellant on a desk. Salter told the officers present the person in the picture was the person who robbed him.

In the very early morning hours of November 6, 2010, Appellant was arrested at the Ranch Motel where he was staying with Jessica Kraus. The Ranch Motel was located "immediately adjacent" to the Relax Inn. At the time of Appellant's arrest, Salter's shoes were located in the trunk of Kraus' vehicle. Kraus' vehicle was located "[r]ight outside" the room in which Appellant and Kraus were staying.

That evening in the course of an interview with St. Robert police officer Michael Hartness, Appellant told Officer Hartness that Nicole "had come by that morning and given him the jacket." Appellant also

told Officer Hartness that "look, if you get me out of here for 30 minutes, I'll get all of the dude's [expletive] back for you." Appellant then took Officer Hartness to the Ranch Motel room where Appellant had been arrested. On entering the room, Appellant asked Kraus "where the trash was." Kraus then took Officer Hartness and Appellant to a dumpster located across the street from Kraus' parents' home, and Kraus pointed to trash. The trash contained Salter's jacket, and in the pockets of the jacket were Salter's wallet, passport, and cell phone. No United States currency was recovered.

## The Trial

During his testimony, Officer Cordova testified that, based on Salter's statements at the scene of the robbery, Officer Cordova "believe[d] [the male suspect] could be Craig Turner." In response to the question "[w]hy did you believe that?," Officer Cordova then explained that, while at the scene of the robbery, he briefed the "on-call detective" Jeff Saylor, and began to testify:

> I briefed him on the description given to me by Salter based on the description and possible prior contact that I've had with Mr. Turner—

At that point, trial defense counsel objected and requested permission to approach the bench. In the bench conference, trial defense counsel argued that Officer Cordova's "prior contact" testimony violated the trial court's previous grant of Appellant's motion in limine that requested the police not state Appellant "was known to them." Trial defense counsel then requested a mistrial, but did not request (1) the jury be instructed to disregard Officer Cordova's "possible prior contact" testimony, (2) any other limiting, curative or cautionary instruction to the jury, or (3) any other less drastic

relief than a mistrial. In the course of hearing argument from counsel, the trial court observed that "[m]y recollection and understanding of the motion in limine was that his alias . . . would not be used," and then denied defense counsel's objection and request for a mistrial after noting that the motion's prayer for relief requested only that the trial court "enter its order in limine to suppress all evidence regarding the alias which the State intends to use against the Defendant. The alias, nickname scenario that he was known by to police. It does not go past that. So I don't think this violates that order."

Officer Cordova then replied "[y]es, sir" to the question "[b]ased on your conversations with Detective Saylor, you thought that the person you might be looking for was Craig Turner?," and the prosecutor went to a different line of questioning.

Subsequently, Corporal Jeffrey J. Saylor with the St. Robert Police Department testified he had been a police officer "[a]pproximately ten years, eleven years," and a short while later stated:

> Officer Cordova told me when he was on the scene with Mr. Salter that Mr. Salter described the suspect as a 5'7, to 5'10 black male of medium build named Craig. And I've known an individual named Craig Turner for approximately ten years.

He also was able to identify Nicole by her tattoos, "Nicole" and a butterfly. He subsequently watched video surveillance tapes at Shenanigan's bar and identified the victim, Appellant, and Nicole. He also identified victim's shoes as the shoes recovered from the search.

Additionally, Bailiff Chad Miller testified that, while riding in an elevator with Appellant following a pretrial hearing, he heard Appellant say "the cops are ly-

ing.... [Y]es, the [expletive] was in my room."

In closing argument, the prosecutor noted that Salter told police Nicole and Craig robbed him, and then stated:

> You heard the police. Once he gave the description, they knew who it was, too, and they acted on that. And within the next day, they had already gathered evidence indicating to them who it was.

Trial defense counsel did not object to Corporal Saylor's testimony or the prosecutor's statements in closing argument.

On June 8, 2011, the trial court sentenced Appellant to ten years in the Missouri Department of Corrections.

### Standard of Review

■ We review a trial court's refusal to grant a mistrial for an abuse of discretion in accordance with the following rules:

> "A mistrial is a drastic remedy to be exercised only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed." *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008). Because the trial court is in the best position to determine if the incident at issue had a prejudicial effect on the jury, the decision to grant or deny a request for a mistrial is left to the discretion of the trial court. *Id.* Therefore, we review a trial court's refusal to grant a mistrial for an abuse of discretion. *Id.* "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." *Id.*

*State v. Meyers*, 333 S.W.3d 39, 43 (Mo. App. W.D.2010). Further:

> Review is for prejudice, not mere error, and we will reverse only if the error is so prejudicial that it deprived the defen-

dant of a fair trial. *State v. McElvain*, 228 S.W.3d 592, 596 (Mo.App. W.D. 2007). Trial court error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial. *Id.* at 596. *See also State v. Wilkins*, 229 S.W.3d 204, 209 (Mo.App. S.D.2007).

*State v. Norris*, 237 S.W.3d 640, 644 (Mo. App. S.D.2007). The defendant has the burden to demonstrate a reasonable probability that the error affected the outcome of the trial. *State v. Wadley*, 327 S.W.3d 25, 33–34 (Mo.App. S.D.2010).

### Analysis

■ In his sole point on appeal, Appellant claims the trial court erred in denying his request for a mistrial based on Officer Cordova's explanation that he believed Appellant "could" or "might be" the robber based on the victim's description of the robber and "possible prior contact that I've had with Mr. Turner." Appellant argues that this "ruling violated [his] right[ ] ... to be tried only for the crime with which he was charged ... in that [the] testimony undoubtedly created the inference that Turner was known to officers due to his prior criminal involvement."

■ As Appellant indicates in his argument, a criminal defendant has a right to be tried only for the offense with which he is charged, and evidence that "definitely associate[s]" the defendant with another crime is inadmissible to show the defendant has a propensity to commit crimes. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989); *Norris*, 237 S.W.3d at 644. However, "[v]ague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." *Norris*, 237 S.W.3d at 644. And, evidence that indicates nothing more specific than that a defendant is known to police is not clear evidence that the defendant was involved in another

crime or, in the language of Appellant's argument, does not "undoubtedly" create an inference that Appellant was known to officers "due to his prior criminal involvement." *See State v. Howard*, 714 S.W.2d 736, 738 (Mo.App. E.D.1986) (on plain error review but after noting that even if the issue were preserved there was no error; stating "[t]he fact that some police officers knew defendant does not necessarily indicate that he has a prior criminal record."); *State v. Simmons*, 939 S.W.2d 487, 490 (Mo.App. W.D.1997) (on plain error review, noting the court's agreement with the language from *State v. Howard* quoted in the immediately preceding parenthetical and then stating "[t]hus, in the instant case, the officers' testimony that they were familiar with appellant and the State's multiple reminders regarding the officers' familiarity during closing argument were not improper, especially since the officers' recognition and identification of appellant was a critical issue."); *see also State v. Ballard*, 6 S.W.3d 210, 212, 214 (Mo.App. S.D.1999) (on plain error review, stating " '[m]ere familiarity with a police officer does not constitute evidence that one has been arrested or convicted of another crime' " (citation omitted) in the context of a police officer's testimony that he did not show a store loss prevention employee a photo lineup because the employee was familiar with the defendant "from a previous incident"); *State v. Harris*, 740 S.W.2d 348, 349, 350 (Mo.App. E.D.1987) (on plain error review but after noting that even if the issue were preserved the defendant would not prevail; stating "[i]t is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer does not necessarily convey the impression that he has a criminal record" (citations omitted) in the context of a store security officer's testimony that she knew the defendant by name and had seen her in the store twenty times).[3]

█ In this case, Officer Cordova referenced "possible prior contact" he had with Appellant; Corporal Saylor testified "I've known an individual named Craig Turner for approximately ten years"; and the prosecutor referenced this testimony once in his closing argument. Appellant did not object to Corporal Saylor's testimony or the prosecutor's closing argument. The testimony was a vague reference that Appellant was known to Officer Cordova. The trial court's denial of Appellant's request for a mistrial after Officer Cordova's

---

3. In *State v. Lee*, 344 S.W.3d 865 (Mo.App. W.D.2011), the State appealed the trial court's dismissal of the State's criminal case with prejudice. *Id.* at 870. Prior to the dismissal, the trial court granted Lee's request for a mistrial of Lee's jury trial after a police officer on cross-examination answered "[r]ight, I knew [Lee] prior." *Id.* at 867. In a subsequent hearing on Lee's motion to dismiss the criminal case with prejudice, the trial court stated the police officer's comment "I knew [Lee] prior" was "completely gratuitous and non-responsive to any question," and was "intentional" and "in an effort to goad the defense attorney into requesting a mistrial." *Id.* at 869. The Western District "vacated" the trial court's judgment dismissing the case with prejudice, (*Id.* at 875) and was careful to note "a mistrial was not manifestly necessary here," (*Id.* at 873) the police officer's comment was "not necessarily so fraught with risk of great prejudice as to be beyond the ability of the court to cure that risk," it was "quite feasible that the potentially prejudicial effect" of the police officer's comment "could have been corrected with the options available to the court," and "[t]his appeal does not require that we decide whether the trial court was outside of its discretion in granting the mistrial as opposed to allowing some other corrective relief." *Id.* at 874. As a result, *Lee* is distinguishable from *Howard* and *Simmons*, and from this case, where no mistrial was declared and there was no finding that the police officer's testimony was intended to "goad" defense counsel into requesting a mistrial.

reference to "possible prior contact" with Appellant was not clearly against the logic of the circumstances before the trial court, and was not so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. Hence, the trial court did not abuse its discretion in denying Appellant's request for a mistrial.

In addition, any error by the trial court in denying Appellant's request for a mistrial did not prejudice Appellant. The evidence against Appellant was strong and included (1) the victim's immediate identification of Appellant as the male robber based on the robber's voice, (2) the recovery of the victim's shoes from the trunk of Appellant's girlfriend's vehicle at the time of Appellant's arrest less than twenty-four hours after the robbery, (3) the identification of Appellant on the video surveillance, and (4) Appellant's admitted knowledge that stolen items belonging to the victim were in the motel room where he was arrested. Appellant fails to persuade us of any reasonable probability that any error by the trial court in denying his request for a mistrial affected the outcome of his trial. As a result, Appellant was not prejudiced by any error the trial court committed in denying his request for a mistrial.[4]

Appellant's point is denied, and we affirm his conviction and the trial court's judgment.

DON E. BURRELL, P.J., and GARY W. LYNCH, J., concur.

[4.] Appellant complains that Officer Cordova's reference to "possible prior contact" with Appellant violated the trial court's pretrial ruling orally granting Appellant's motion in limine. As the trial court explained at the time of Appellant's objection and request for a mistrial, its understanding was that the pretrial order granting Appellant's motion in limine extended only to evidence of Appellant's alleged alias and Officer Cordova's reference to "possible prior contact" with Appellant did not violate that order. We see no error in the trial court's interpretation of its pretrial order orally granting Appellant's motion in limine.