In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

STATE OF MISSOURI, ) No. ED108768
 )
 Respondent, ) Appeal from the Circuit Court of
 ) St. Louis County
vs. ) 16SL-CR00743-01
 )
BRIAN R. GRAVES, ) Honorable Ellen H. Ribaudo
 )
 Appellant. ) Filed: March 23, 2021

Angela T. Quigless, P.J., Kurt S. Odenwald, J., and James M. Dowd, J.

 Introduction

 Brian Graves appeals the judgment entered upon a jury verdict reached in the Circuit

Court of St. Louis County convicting him of two counts of the class D felony of abuse of a child.

On appeal, Graves argues the trial court abused its discretion (1) by overruling his motion for a

mistrial, and (2) by refusing to give an advisory opinion on the evidentiary impact of an expert's

report Graves considered offering. Finding no error, we affirm.

 Background

 On January 29, 2016, Graves brought his 8-week-old baby to Children’s Hospital in the

City of St. Louis and told the hospital staff he noticed an injury to the infant’s arm after he

dropped the infant on the kitchen floor. Upon examination and radiographic studies, hospital

personnel determined that the infant sustained approximately 30 fractures including 2 skull
fractures, 13 broken ribs, multiple fractures of each limb, vertebrae fractures, and a broken pelvic

bone. Finding these injuries to be inconsistent with Graves’s story, they contacted police who

arrested Graves.

 The next day at the Florissant, Missouri police department, Graves was mirandized and

then interviewed by Detectives Reiland and Coder for several hours. The interview was

videotaped. Graves confessed to shaking the baby on multiple occasions over several weeks.

The State charged Graves with five counts of felony abuse of a child.

 Prior to trial, Graves filed a motion in limine to preclude all evidence of a 2013

accusation against Graves that he abused his daughter which was never prosecuted. The trial

court ruled the 2013 incident would not be admitted unless the defense opened the door by

asserting the baby's injuries were the result of a mistake or an accident.

 At trial, during the State’s case-in-chief, the January 30, 2016 recording of the detectives'

interview of Graves was admitted into evidence and played for the jury. Since during that

interview Graves was questioned multiple times about the 2013 accusation, the State agreed to

redact those references from the videotape and from the transcript of the recording in accord with

the trial court's ruling. However, the State failed to remove all of the 2013 references and the

following exchange was played to the jury:

 Detective Reiland: ... and I know that according to your wife, okay, I know and what I
 want to explain to you about this is that I read all of the notes and everything from 2013,
 and back then she didn’t want you – is it the same gal you’re with now?

 Graves: Uh-huh.

 Detective Reiland: Okay. She did not want to leave the children with you, okay?

 Graves: Uh-huh.

 Detective Reiland: According to what she told the social worker at that time.

 Graves: Uh-huh.

 2
 At that point, the prosecutor stopped the video and the trial court and counsel conferred

on the matter outside the hearing of the jury. The prosecutor represented that the failure to redact

the reference to the 2013 circumstance was an inadvertent mistake. Then, after the prosecutor

noted that he previously provided to defense counsel the redacted transcript,1 defense counsel

stated: “and which I did check, and we didn't (sic) note that four times, I mean, at this point I

think we have got to request a mistrial based on the previous ruling.” The redacted videotape

and transcript referenced the 2013 allegations a total of four times though only the foregoing one

was actually played as the others occurred later in the interview.

 The trial court denied Graves’s request for a mistrial. The court explained that the video

was stopped prior to “the explanation about the wife not wanting the children left with him while

she was not there,” and ruled that “the mere mention of 2013 in and of itself” was insufficient

“for the jurors to have any understanding of what that was about.”

 The later references to the 2013 events were removed from the jurors’ copies of the

transcript and the rest of the redacted video was played with the audio muted during the portions

in which the 2013 allegations of past abuse were discussed.

 After the State rested, the defense called an expert witness, Dr. Jane Turner, a forensic

pathologist with a focus on unexplained pediatric deaths. Dr. Turner opined based on her review

of the infant victim’s medical records that the treating doctor failed to adequately rule out

vitamin D deficiency, rickets, or osteomalacia as possible causes of the injuries. She based her

theory on the lack of bruising and swelling near the area of the fractures, the victim’s elevated

parathyroid hormone and alkaline phosphatase levels, the diagnosis of congenital glaucoma, a

failed hearing test, and the victim's poor growth rate. Dr. Turner further testified that based on

1
 Prior to trial defense counsel posed objections to other statements in the redacted transcript but
did not object to any of the 2013 references.
 3
her review of the medical records, police reports, interviews, and photos, it was her opinion that

the infant had a genetic disorder and was not the victim of severe trauma.

 At that point, Graves's counsel requested a sidebar conference outside the hearing of the

jury concerning Dr. Turner's written report which had not yet been offered into evidence.

Defense counsel asked the court if offering Dr. Turner’s full report would open the door to the

2013 alleged abuse in light of the court's earlier ruling that evidence of the 2013 incident was not

admissible unless Graves opened the door by arguing mistake or accident. The trial court

indicated it would rule whether the door was opened if Graves offered the report into evidence.

If the report was not being offered, the court explained that providing a preliminary ruling on the

matter would constitute improper guidance and that the court’s review of the expert's report in its

entirety would be an inappropriate use of the jurors' time. Graves did not move to admit Dr.

Turner’s report into evidence.2

 The jury found Graves guilty of two counts of the class D felony of abuse of a child, a

lesser-included-offense of the original charges, and not guilty of the other three charges of abuse

of a child. The trial court sentenced Graves to 7 years in prison on each of the two counts, to be

served concurrently.

 Standard of Review

 The decision to grant or deny a mistrial is a matter within the sound discretion of the trial

court. State v. Witte, 37 S.W.3d 378, 383 (Mo. App. S.D. 2001); State v. Jones, 921 S.W.2d 28,

32 (Mo. App. W.D. 1996). The decision should be honored by the appellate courts unless there

is a clear showing in the record that the trial court abused its discretion. Witte, 37 S.W.3d at 383.

2
 Graves included this claim in his timely-filed motion for new trial, preserving the issue for
appellate review.
 4
 The decision to admit or exclude evidence at trial is a matter within the sound discretion

of the trial court. State v. Blurton, 484 S.W.3d 758, 769 (Mo. banc 2016). In Blurton, the

Missouri Supreme Court described our standard of review in this context as follows:

 A trial court has broad discretion to admit or exclude evidence at trial. State v. Hunt, 451
 S.W.3d 251, 263 (Mo. banc 2014). A trial court's decision regarding the exclusion or
 admissibility of evidence is reviewed for an abuse of discretion. Id. A trial court abuses
 its discretion only if its decision to admit or exclude evidence is “clearly against the logic
 of the circumstances then before the court and is so unreasonable and arbitrary that it
 shocks the sense of justice and indicates a lack of careful, deliberate consideration.”
 Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 451 (Mo. banc 2014) (internal quotations
 omitted). Claims of trial court error are reviewed “for prejudice, not mere error.” State v.
 Clark, 364 S.W.3d 540, 544 (Mo. banc 2012) (internal quotations omitted). This Court
 will reverse the trial court's decision only if there is a reasonable probability that the error
 affected the outcome of the trial or deprived the defendant of a fair trial. Id.”

Id.

 Discussion

I. The trial court did not abuse its discretion by overruling Graves’s mistrial motion.

 Graves argues the trial court abused its discretion by denying his motion for mistrial after

his video-recorded police interview was played at trial and included a reference to a previous

allegation of child abuse - a prior uncharged crime - that the court had ordered excluded and

which should have been redacted from the videotape.

 A mistrial is a drastic remedy that should be granted only in extraordinary circumstances.

State v. Smith, 934 S.W.2d 318, 320 (Mo. App. W.D. 1996). A circuit court's denial of a mistrial

is reviewed for a “manifest abuse of discretion.” Spence v. BNSF Ry. Co., 547 S.W.3d 769, 780

(Mo. banc 2018). “To establish a manifest abuse, there must be a grievous error where prejudice

otherwise cannot be removed.” Sherrer v. Boston Scientific Corporation, 609 S.W.3d 697, 705

(Mo. banc 2020) (citing St. Louis Univ. v. Geary, 321 S.W.3d 282, 293 (Mo. banc 2009)).

 5
 As a general rule, evidence of other crimes is inadmissible if it is offered to show that a

defendant is a person of bad character or has a propensity to commit crimes. State v. Conley,

873 S.W.2d 233, 236 (Mo. banc 1994). However, “[v]ague and indefinite references to

misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant’s

involvement in another crime.” State v. Turner, 367 S.W.3d 183, 188 (Mo. App. S.D. 2012).

 The trial court is in the best position to determine whether prejudice resulted. Id. Courts

have developed the following five-factor balancing test to analyze the prejudicial effect of

uninvited evidence of other crimes:

 1) whether the statement was, in fact, voluntary and unresponsive [to the prosecutor's
 questioning if the prosecutor asked the question] ... or whether the prosecution
 “deliberately attempted to elicit” the comments ...; 2) whether the statement was singular
 and isolated, and whether it was emphasized or magnified by the prosecution, ...; 3)
 whether the remarks were vague and indefinite, or whether they made specific reference
 to crimes committed by the accused, ...; 4) whether the court promptly sustained defense
 counsel's objection to the statement, ... and instructed the jury to disregard the
 volunteered statement, ...; and 5) whether in view of the other evidence presented and the
 strength of the state's case, it appeared that the comment “played a decisive role in the
 determination of guilt.”

State v. Smith, 934 S.W.2d 318, 320–21 (Mo. App. W.D. 1996) (quoting State v. Silas, 885

S.W.2d 716, 720 (Mo. App. W.D. 1994). We analyze the brief reference to the 2013

circumstances at issue here according to this framework.

 1. The State did not deliberately attempt to elicit reference to the 2013 allegations.

 The State mistakenly believed that the reference to the 2013 allegation had been redacted.

While the State remains responsible for this gaffe, the incompletely-redacted transcript was

provided prior to trial to Graves's counsel to review and he conceded he "did check" it.

Moreover, the State immediately stopped the videotape once the 2013 situation was mentioned

and before any further reference was heard. In short, we conclude that the brief reference to the

 6
2013 circumstance regarding Graves’s wife’s reluctance to leave their children with Graves was

not deliberately elicited by the State.

 2. The statement was singular, isolated, and not emphasized by the State.

 After stopping the video, the State requested a sidebar conference outside the hearing of

the jury. When the jury returned, the trial court took responsibility for the delay indicating it had

needed to address a matter unrelated to Graves's case. The State made no further reference to the

2013 situation or to any other allegation of child abuse against Graves.

 3. The statement was vague and indefinite and not specific to a crime.

 While the tape referenced the year 2013 and Grave's wife's statement to a social worker

that she did not want to leave her children with Graves, this was not a specific reference to a

crime or other wrongdoing.

 4. Graves did not to seek a curative instruction.

 Graves did not object to the video and chose not to request a curative instruction.3 His

counsel reasoned that a curative instruction would only highlight the statement to the jury.4

 5. The statement did not play a decisive role in the jury’s finding of guilt.

 Lastly, in light of the overwhelming weight of the evidence against Graves, the reference

to the 2013 situation played little to no role in his convictions. The jury heard Graves's shifting

explanations for the infant victim’s injuries and his admission that he lied to the detective.

3
 “The fact that a defendant declines a curative instruction and seeks no other relief than a
mistrial cannot aid his or her cause.” State v. Shelton, 529 S.W.3d 853, 863 (Mo. App. E.D.
2017).
4
 Presumably, Graves found the statement to be vague and not prejudicial enough to warrant the
Court’s instruction to the jury to disregard it. Moreover, the record suggests that Graves's
counsel may have been aware that the State had inadvertently failed to redact all the references to
the 2013 allegations from the video and the transcript. Counsel's initial response when the State
stopped the tape indicates he had reviewed the transcript and knew that the 2013 allegations
appeared exactly four times.
 7
Graves first represented he dropped the baby on the kitchen floor, then he said he dropped the

baby down two stairs. Next, he said he fell down a flight of stairs and landed on top of the child.

Finally, Graves took responsibility for shaking the baby out of frustration. And ultimately, the

jury watched and listened as Graves confessed to detectives, “I’m telling you the reason why I

haven’t told you this part is because of the shame and guilt (sic) for I did shake him. I did shake

him.”

 As far as the experts are concerned, the State's expert witness testified Graves’s abuse

caused the infant's injuries and Graves’s expert’s opinions on causation were undermined on

cross-examination because they were demonstrated to be based on flawed interpretations of the

victim’s medical records.

 We find, therefore, upon consideration of the foregoing factors, that Graves was not

prejudiced by the inadvertent reference to the 2013 circumstances and the trial court did not

abuse its discretion in denying here the drastic remedy of a mistrial.5 Smith, 934 S.W.2d at 320.

II. Defense expert Dr. Turner's written report.

 The trial court did not abuse its discretion with regard to Dr. Turner’s written report

because the report was never offered into evidence and the trial court is not required to provide

an advisory ruling or opinion to a party. Wasinger v. Lab. & Indus. Rels. Comm'n, 701 S.W.2d

793, 794 (Mo. App. E.D. 1985). Graves asserts on appeal that the trial court refused to rule on

his offer into evidence of the written report of Dr. Turner. This is not accurate because Graves

never offered Dr. Turner's report into evidence. Rather, a more accurate depiction of Graves's

5
 We note that Graves's counsel's argument for a mistrial shifted at trial. Initially, he argued that
prejudice resulted from the foregoing brief reference to the 2013 circumstance that the jury
heard. Then, he argued that his client was prejudiced because of the risk that one or more of the
juror's read ahead in the transcript and saw one of the additional references to the 2013 child
abuse allegation before the transcripts were removed from their possession and correctly
redacted. This latter argument was not posed here on appeal.
 8
complaint is that the trial court refused to provide Graves an advisory opinion on whether the

door to evidence of the prior allegations of child abuse would be opened if Graves offered into

evidence Dr. Turner’s report.

 Here is what happened. Graves's counsel approached the bench and asked the court,

“And so I am just requesting guidance from the Court, if the admission of this report, would that

open the door for what’s been previously ruled inadmissible.” The court asked defense counsel

if he was offering the report into evidence to which he replied, “I will not if it will open the

door.” The court explained, “If you are offering something into evidence the Court will decide

whether or not that is admissible and whether or not it opens the door. If you are not, then the

Court has no reason to go into it. And I am not going to sit here and take up jurors' time to give

you guidance, which I think is improper on the Court’s part.”

 We agree that trial courts are not required to give advisory rulings or opinions. Id. An

advisory opinion is a “nonbinding statement by a court of its interpretation of the law on a matter

submitted for that purpose.” Black' s Law Dictionary 1125 (8th ed. 2004). Advisory opinions

have been described as those which are based on hypothetical situations and are not necessary

for the resolution of the case before the court. State v. Self, 155 S.W.3d 756, 761 (Mo. banc

2005); State v. Burgin, 203 S.W.3d 713, 717 (Mo. App. E.D. 2006).

 The question becomes whether Graves was asking for an advisory opinion or whether

Graves was simply asking the trial court to clarify its earlier ruling with respect to what

circumstances would open the door to the 2013 child abuse allegations. Generally, trial courts

should be (and usually are) readily willing to explain their rulings including requests whether

certain evidence or testimony would constitute the type of evidence that would open the door in

the context of an earlier ruling by the court.

 9
 Here, however, Graves asked the court to commit itself with respect to the impact the

admission of an entire expert witness report would have on one of the court's earlier rulings.

This is an overly broad question likely requiring a thorough review and analysis which the trial

court determined was not appropriate for it to do. We agree and we defer to the trial court's

broad discretion on such questions. Perhaps, if Graves had pointed out to the court a specific

statement or conclusion in the report he found touched on the issues of mistake or accident as the

cause of this baby's injuries, the court may have been more likely to opine.

 Nevertheless, we need not decide this question because Graves has failed to demonstrate

that he was prejudiced. Dr. Turner testified at length as to her opinions that the baby's injuries

were caused not by Graves but by certain pre-existing medical conditions. Graves has failed to

demonstrate to us what the written report would have provided that her testimony did not.

 Further, Graves has failed to properly preserve this issue for appeal because he failed to

make an offer of proof. As a result, the report itself is not before us. We generally do not review

a point challenging a trial court’s ruling on evidentiary matters unless the proponent of the

evidence preserved the point by making a specific and definite offer of proof before the trial

court. Frank v. Envtl. Sanitation Mgmt., Inc., 687 S.W.2d 876, 883–84 (Mo. banc 1985).

 Point denied.

 Conclusion

 Accordingly, the judgment is affirmed.

 _____________________________
 James M. Dowd, Judge

Angela T. Quigless, P.J., and
Kurt S. Odenwald, J., concur.

 10