

# NUMBER 13-16-00242-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RICHARD HENDERSON,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

## On appeal from the 94th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Perkes, and Valdez [1]
### Memorandum Opinion by Justice Valdez

Appellant Richard Henderson was indicted for armed robbery. *See* TEX. PENAL

---

[1] Retired Thirteenth Court of Appeals Chief Justice Rogelio Valdez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

CODE § 29.03 (West, Westlaw through 2017 1st C.S.). A jury was convened, and after two days of testimony, the trial court granted Henderson's request for a mistrial. The State recharged Henderson with felony theft by information and alleged he was a habitual felony offender. Act of June 7, 1995, 74th Leg., R.S., ch. 318, § 9, 1995 Tex. Gen. Laws 2734, 2738 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West, Westlaw through 2017 1st C.S.)); TEX. PENAL CODE ANN. 12.425(b) (West, Westlaw through 2017 1st C.S.). Henderson filed a writ of habeas corpus arguing double jeopardy prevented the subsequent prosecution for theft, which the trial court denied. Pursuant to a plea agreement, Henderson pleaded guilty to the offense, and the trial court sentenced him to ten years confinement. By three issues, Henderson argues that: (1) the trial court erroneously ordered a mistrial sua sponte, (2) the State engaged in prosecutorial misconduct, and (3) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Javier Santos was working as a loss prevention officer at Sears in Corpus Christi, Texas. His testimony provided that on October 13, 2014, he observed Henderson remove a security device from a tool bag and proceed to exit Sears without paying for the merchandise. When Santos and another loss prevention officer confronted Henderson in the parking lot, Henderson drew an object that appeared to be a revolver. The loss prevention officers hid behind some pillars while Henderson yelled obscenities and drove away with the merchandise.

On May 21, 2015, Henderson was indicted for armed robbery as a habitual felony offender, and the case went to trial on December 8, 2015. *See id.* §§ 29.03; 12.42(d).

Prior to opening statements, the trial court ruled that the State would be allowed to present evidence that Henderson stole merchandise from Sears on previous occasions. During its opening statement, the State advised the jury it would hear evidence of Henderson making "statements trying to get him anything but an aggravated robbery charge."

The State called Corpus Christi police officer Crispin Mendez as a witness. When the State questioned Mendez about a conversation he had with Henderson, Mendez testified that Henderson said he could not "go to back to prison." Henderson objected, and the trial court recessed. When the trial court reconvened, Henderson moved for a mistrial, which the trial court granted.

Approximately two months later, Henderson filed a writ of habeas corpus complaining that the trial court declared a mistrial sua sponte when lesser sanctions should have been administered. Alternatively, he argued the mistrial was a result of prosecutorial misconduct. When the trial court asked Henderson's counsel whether he asked for a mistrial rather than the trial court ordering one sua sponte, counsel responded, "I asked for a limine instruction and a mistrial." The trial court denied the writ.

The State moved to dismiss Henderson's indictment for aggravated robbery on April 4, 2016 and recharged him by information with felony theft as a habitual felony offender. *See id*. §§ 31.03(e)(4)(d); 12.425(b). Pursuant to a plea agreement, Henderson pleaded guilty to the offense, and the trial court sentenced him to ten years' confinement. This appeal followed.

## II.    DOUBLE JEOPARDY

By his first issue, Henderson contends that his subsequent prosecution on April 4, 2016, for theft violates the Fifth Amendment Double Jeopardy Clause. *See* U.S. CONST.

amend. V. Specifically, Henderson claims "the trial court determined to grant a mistrial sua sponte." In response, the State asserts the trial court granted a mistrial at Henderson's request. Henderson concedes that "[o]n the face of the record, it appears defense counsel asked for a mistrial before the court ordered it"; however, the trial court "had already stated in chambers his decision to declare a mistrial."[2]

## A.    Applicable Law

The Double Jeopardy Clause commands that "no person shall be subject for the same offence to be twice put in jeopardy of life or limb." *Id*. The clause prohibits the State from repeatedly attempting to convict a defendant of an offense, thereby "subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Blueford v. Arkansas*, 132 S. Ct. 2044, 2050 (2012). When a jury is empaneled and sworn, jeopardy attaches. *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002). When jeopardy attaches, a mistrial declared over the defendant's objection, ordinarily bars further prosecution for the same offense. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011). However, double jeopardy does not bar the subsequent prosecution of the same offense when a mistrial is declared either with the defendant's consent or when it arises from a manifest necessity. *Hill*, 90 S.W.3d at 313.

## B.    Henderson Requested a Mistrial

On December 9, 2015, the following exchange occurred in front of the jury:

[State]:          Now, after talking about the knife, do you remember talking, or [Henderson] talking about anything else?

---

[2] No record was made of the in-chambers discussion.

4

| [Mendez]: | Yeah, talking about the knife, I told him I liked his knife, the way it was shaped like a gun. And then he just wanted to know that if there was anything I could do to help him. |
| :--- | :--- |
| [State]: | Okay. |
| [Mendez]: | And his thing was he wouldn't mind going out and getting dope or making cases for us. He just didn't want to have – you know, he goes, "I can't go back to prison. I can't do time in prison." And so – |
| [Defense Counsel]: | Objection, Your Honor. |
| [Court]: | Sustained. |
| [State]: | Okay. What was his main – |
| [Defense Counsel]: | I move – |
| [Court]: | Okay, let's – let's take a break. Yeah all right. Let's take a break. |

After a recess, Henderson moved for a jury instruction and a mistrial:

| [Defense Counsel]: | I already objected and – |
| :--- | :--- |
| [Court]: | You objected. |
| [Defense Counsel]: | I need to move for a jury instruction and move – move for a mistrial. |
| [State]: | And I would ask that it be struck from the record and that the jury be asked to disregard it, instead of a mistrial at this point. |
| [Court]: | I just don't think – I just think it's too prejudicial. I think I have to declare a mistrial because the prior came out . . . . Okay, all right. Well, I'll declare a mistrial. Give them resets. |

Henderson expressly moved for a jury instruction and a mistrial. Although Henderson argues that the trial court sua sponte ordered a mistrial, the record shows that the trial court granted the mistrial at Henderson's request—the underlying basis of which

5

was the prejudicial effect of Henderson's prior criminal offense. Moreover, at the writ of habeas corpus hearing on February 18, 2016, the trial court asked Henderson whether Henderson requested a mistrial. Henderson admitted that he asked the trial court for a mistrial: "When we came back on the record, I asked for a limine instruction and a mistrial to give [the trial court] options." Because the trial court granted a mistrial at Henderson's request, he cannot now argue that the trial court sua sponte ordered a mistrial. *See Ex parte Wheeler*, 203 S.W.3d 317, 322 (Tex. Crim. App. 2006) (holding that if a defendant requests a mistrial, double jeopardy normally does not bar reprosecution). Therefore, double jeopardy did not attach. *See Hill*, 90 S.W.3d at 313. We overrule Henderson's first issue.

## C.     Prosecutorial Misconduct

By his second issue, Henderson argues that double jeopardy attaches because the mistrial was a result of the State's misconduct as well as "governmental misconduct" by "agents of the State."

### 1.     Applicable Law

Absent exceptional circumstances that show the prosecutor intentionally provoked a mistrial, the Double Jeopardy Clause is not violated if the trial ends prematurely. *Pierson v. State*, 426 S.W.3d 763, 740 (Tex. Crim. App. 2014). A retrial may be barred by double jeopardy, however, if the defendant presents objective facts and circumstances to demonstrate that the prosecutor's misconduct in the case occurred because the prosecutor "intended to 'goad' the defendant into moving for a mistrial[.]" *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982). In a hearing on an application seeking pretrial habeas relief, the defendant bears the burden of proving his double jeopardy claim by a

6

preponderance of the evidence. *Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio 2011, no pet.). When the defendant is the party who requested the mistrial, as is the case here, the record must show the State intentionally provoked the defendant into requesting the mistrial. *See Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005). The Court of Criminal Appeals has provided the following nonexclusive list of factors for courts to consider:

(1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

(2) Was the misconduct repeated despite admonitions from the trial court?

(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

(4) Was the conduct "clearly erroneous"?

(5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

(6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Ex parte Wheeler*, 203 S.W.3d 317, 323–24 (Tex. Crim. App. 2006). These factors are not exclusive. *Id*. at 323.

### 2. Prosecutorial Misconduct

At the writ of habeas corpus hearing, although Henderson bore the burden of proof on his application, he called no witnesses. *See Ex parte Chandler*, 182 S.W.3d at 353 n.2. Henderson merely argued the State committed prosecutorial misconduct by going outside the scope of Mendez's testimony to elicit testimony about Henderson's previous conviction in violation of a motion in limine. However, the State did not violate the motion

7

in liminie; it was the witness that inadvertently went beyond the scope of the State's question. The State testified that it was attempting to elicit information about Henderson seeking to cooperate in exchange for reduced charges, which was relevant to establish Henderson's admission of guilt. Therefore, the State provided a reasonable good faith explanation for its line of questioning, and there was a plausible basis for the conduct. *See Ex parte Wheeler*, 203 S.W.3d at 323–24. Moreover, the witness did not repeat the complained-of comment, nor did the trial court admonish the witness. *Id*.

According to Henderson, "statements made in plea negotiations are inadmissible when they fail to lead to a plea agreement or when the agreement is later withdrawn." While Henderson is correct in that statements made during plea negotiations are inadmissible, the complained of statement was not made while Henderson was engaged in a plea negotiation. Mendez, acting in his role as a police officer, was not engaging in a plea agreement, and therefore, the statement was not part of plea discussions. *See* TEX. R. EVID. 410(b) (providing that a statement made during plea discussions with an *attorney* is inadmissible if the discussion did not result in a guilty or nolo contendere plea or resulted in a later withdrawn guilty or nolo contendere plea); *see also Abdel–Sater v. State*, 852 S.W.2d 671, 673 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd (holding that appellant's statements to a police officer were not part of plea negotiations). Therefore, we conclude that the State did not intend to engage in an objectionable line of questioning. *See Ex parte Wheeler*, 203 S.W.3d at 323–24.

### 3. Governmental Misconduct

Next, Henderson claims that the mistrial was the result of State misconduct because "law enforcement officers are no less agents of the State of Texas than are

8

prosecuting attorneys." However, the State's witness never testified that he was assigned to or worked under the direction of the District Attorney's Office. *See State v. Rushing,* __ S.W.3d __, __, No. 09-16-00423-CR, 2017 WL 4182316, at *7 (Tex. App.—Beaumont 2017, pet. ref'd) (refusing to find police misconduct in a double jeopardy analysis could be attributed to the State's conduct). Moreover, there was no evidence before the trial court showing the State had notice that its witness might mention Henderson's previous offense. By contrast, the record reflects the State previously instructed Mendez not to discuss Henderson's prior offense, and Mendez apologized for inadvertently commenting on it: "Yeah, we talked about not bringing up, you know, what he was arrested for, this and that, and I just was thinking about [my] conversation with [Henderson] and what we had said, and [the prior] just came out. And I was like – as soon as I said it, I know it was wrong [sic]."[3]

While we certainly cannot condone any violation of a motion in limine by any witness, we agree with the trial court that the testimony was inadvertent, as acknowledged at the time by Mendez, the State, and the trial judge. *See Ex parte Washington*, 168 S.W.3d 227, 237–38 (Tex. App.—Fort Worth 2005, no pet.) (refusing to attribute the witness's conduct to the prosecution for double jeopardy purposes where the State had no advance notice the witness intended to provide improper testimony about the defendant's extraneous offenses). Therefore, we conclude Henderson did not meet his burden of establishing that manifestly improper prosecutorial misconduct provoked the request for a mistrial or that the State engaged in that conduct with the intent to goad Henderson into requesting a mistrial. *See id.* at 239. Accordingly, we hold these

---

[3] In addition, the State testified that it intended to ask its witness to "confirm that we talked about not getting into that and it was nothing intentional . . . on either of our part[s]."

9

comments do not constitute a basis for barring retrial under double jeopardy principles. *See id*. We overrule his second issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his final issue, Henderson contends that he did not receive effective assistance of counsel because he was "coerced" to plead guilty to a "fatally deficient" information "as it did not contain any enhancement allegations that would allow [Henderson's] alleged Class B misdemeanor theft to be enhanced to a State Jail Felony."[4] However, the record reveals that Henderson was charged with a state jail felony, not a Class B Misdemeanor. *See* TEX. CODE CRIM. PROC. ANN. 1.141 (West, Westlaw through 2017 1st C.S.) ("A person represented by legal counsel may in open court or by written instrument voluntarily waive the right to be accused by indictment of any offense other than a capital felony. On waiver as provided in this article, the accused shall be charged by information.").

### A. Standard of Review

Henderson shouldered the burden to establish by a preponderance of the evidence that: (1) trial counsel performed deficiently; and (2) counsel's deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 664, 668 (1984); *see also Pina v. State*, 127 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Judicial review of counsel's performance is highly deferential, and ineffective assistance will be found only if Henderson is able to overcome the strong presumption that his

---

[4] Contrary to the ineffective assistance of counsel claim, Henderson made the following statement to the trial court:

> And I'd also like to do something else that's unusual here and that's to thank my court-appointed attorney. You don't see too many guys standing up here going to prison thanking their lawyers, but I'd like to thank [my attorney]. If I had had a million bucks, I wouldn't have wanted a different attorney. In all my life, I've never been represented more passionately by a paid or a court-appointed attorney, and I believe the Court will stipulate I've known a few attorneys.

10

counsel's conduct fell within the wide range of reasonable, professional assistance. *See Strickland*, 466 U.S. at 668. In evaluating trial counsel's performance, we presume counsel's conduct was motivated by sound trial strategy. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). The record must affirmatively demonstrate trial counsel's alleged ineffectiveness. *Prine v. State,* 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). When the record is silent concerning the reasons for trial counsel's actions, we do not engage in speculation to find ineffective assistance of counsel. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). "The fact that another attorney might have pursued a different course of action or tried the case differently will not support a finding of ineffective assistance of counsel." *De Los Santos v. State*, 219 S.W.3d 71, 75 (Tex. App.—San Antonio 2006, no pet.).

**B.     Discussion**

At the time Henderson was charged, the Texas Penal Code provided that an offense under section 31.03 was a state jail felony if the value of the property was less than $1,500 and the defendant had previously been convicted of any grade of theft at least twice. Act of June 7, 1995, 74th Leg., R.S., ch. 318, § 9, 1995 Tex. Gen. Laws 2734, 2738 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West, Westlaw through 2017 1st C.S.)). Here, the felony information filed by the State alleged, in relevant part, that Henderson previously had been convicted of theft on December 5, 2005 and March 20, 2006 and listed the cause numbers of the previous convictions and court in which he was convicted. Thus, we disagree with Henderson that it was "impossible to discern what those [prior] misdemeanor convictions" were such that the felony information was fatally improper on its face. Accordingly, he has not

11

established that but for his counsel's failure to move to quash or otherwise object to the indictment, the outcome of his trial would have been different. *Straight v. State*, 515 S.W.3d 553, 570 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). We overrule his last issue.

## IV. CONCLUSION

Having overruled Henderson's issues, we affirm the trial court's judgment.

ROGELIO VALDEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of April, 2019.